[Crim. No. 14975. Second Dist., Div. One. Nov. 7, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES LEROY FOUST, Defendant and Appellant.

Jeffrey Brodey, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and William V. Ballough, Deputy Attorney General, for Plaintiff and Respondent.

FOURT, J.—This is an appeal from a judgment of conviction of voluntary manslaughter (§ 192, subd. 1, Pen. Code).

In an information filed in Los Angeles on October 9, 1967, James LeRoy Foust was charged with murdering Dale Keith Maupin on September 5, 1967. It was further charged that Foust had previously been convicted of a felony in Pennsylvania in 1964 and served a term therefor in prison. In the first instance the prior was denied but ultimately was admitted. Defendant was found guilty in a jury trial of murder in the second degree. In lieu of granting a motion for a new trial the court reduced the offense to voluntary manslaughter, a lesser necessarily included offense. A timely notice of appeal was filed.

A résumé of some of the facts is as follows: on September 5, 1967, at about 3 p.m. Foust and Colleen Hickey entered the Hi De Ho Bar located in El Monte. The two had been drinking during the day at various other bars. Foust ordered some beer and played some pool. Foust and Hickey engaged in several arguments and they were asked to leave the establishment by Ruth Kenner, the manager. Foust seemed agreeable to leaving but Hickey indicated that she was not inclined to go and picked up her purse and started for the washroom. Foust grabbed the purse and Hickey locked herself in the washroom and cried. Foust unsuccessfully attempted an entrance into the washroom. Kenner entered the washroom and talked to Hickey at Foust's request and then came out and advised Foust that Hickey had stated she was not going to leave with him. Foust made a telephone call and when Kenner threatened to call the police Foust left taking

Hickey's purse with him. Kenner went outside and unsuccessfully attempted to retrieve the purse from Foust. Dale Maupin, who was on leave from the Air Force, with others who had been in the bar, stepped outside. Foust threw the purse into the back seat of a car and drove away a short distance. He then got out of the car, took off his coat and motioned apparently for Maupin to come to him. Foust weighed about 137 pounds. Mapin was 5 feet 11 inches tall and weighed 179 pounds. Maupin, the manager and others went back into the bar. In about 15 minutes Foust returned to the bar and entered through the front door. Hickey, who in the meantime had come out of the washroom and was seated at the end of the bar talking with Kenner, upon seeing Foust enter the bar, immediately went behind the bar and crouched down below the bar counter. Foust followed Hickey—Kenner followed and attempted to get Foust out from behind the bar. A scuffle ensued and ultimately in spite of being shoved and pushed Kenner was successful in getting Foust from behind the bar.

As Foust half turned toward Kenner, Maupin told Foust to stop causing trouble. Foust said something to the effect that Maupin had wanted to fight with him ever since he had arrived at the bar—Maupin replied, "No, I don't want to fight with you, but you are not going behind the bar." Maupin placed his hands on Foust's shoulders, Foust said, "Okay, let's go at it." Foust then moved toward Maupin, dropped his arms and slipped a switch blade knife out of his jacket sleeve. The knife was opened by Foust and he then stabbed the blade into Maupin. Maupin fell to the floor. Maupin died September 6, 1967, from a 3½-inch long and 3½-inch deep chest stab wound in the heart. There was a similar stab wound on the back of Maupin's left arm. Foust fled the scene and was captured by the police the day following after a short chase.

 Appellant now asserts that the court erred in not dismissing the public defender from the case. There is no contention with reference to the sufficiency of the evidence to support the judgment.

The public defender represented appellant at the preliminary examination. At the arraignment in the trial court the public defender was again appointed to represent appellant and such representation continued through the trial, the motion for new trial, and sentencing procedure.

The first prosecution witness (a bar maid who witnessed the

killing) testified for the prosecution, and was cross-examined for a considerable time by appellant's counsel when the judge declared the morning recess. After the recess appellant's counsel advised the court that appellant wanted to make "motion as to representation." The jury was excluded from the court room and Foust then made a statement to the court the effect of which was to request a removal of the public defender because of his inadequacy.[1]

---

[1] "I don't know how the proceedings go or anything, but it's obvious to me that my lawyer doesn't have his case prepared. He is looking through there, and every time he is asking the same questions over that have been asked, and when it is obvious that the witness is lying, and it's already in her previous statement. It is just skipped over, and, well, I feel like I am just not getting—well, I am not getting what the people— I am not getting the right counsel right now.

"THE COURT: Well, the motion which you are making to the Court is that you desire your present counsel to be relieved on the basis that he is inadequate to defend you?

"DEFENDANT FOUST: Well, I could also say something else, your Honor, but I don't know if it is permissible, but there are two witnesses that have heard my attorney say he didn't want my case anyway, and they said that they would testify in court to this effect.

"THE COURT: Where are those witnesses?

"DEFENDANT FOUST: In court.

"THE COURT: Well, let's have them come forward and be sworn. Are there any such witnesses in the court that have heard Mr. Maines?

"THE DEFENDANT: They are not here right now. They are wherever you send them.

"THE COURT: What are their names, and I will have them brought into this court.

"THE DEFENDANT: Mrs. Louise Hickey.

"THE COURT: All right. We will first call Mrs. Louise Hickey in this court.

"MR. YOUNGQUIST: Is that the mother of Colleen Hickey?

"THE DEFENDANT: Yes.

"MR. YOUNGQUIST: Colleen Hickey was a People's witness and she is excused until tomorrow morning, and I believe Mrs. Louise Hickey went with her at that time, your Honor. They left this morning and they will be back at 9:30 in the morning.

"THE COURT: All right. What is the other witness?

"THE DEFENDANT: Those are the two witnesses.

"THE COURT: All right. I want to tell you, Mr. Foust, that the lawyer who is defending you here is a very able lawyer and has appeared before my court many times in the past year that I have been sitting in this court, and he is a fine lawyer, and he knows how to represent you, and to represent you properly. Now, not being a lawyer and not having been in court, I will say very often, although you have been before one Court, at least, I am sure that you are not versed with competence of counsel.

"Lawyers in this State have to go to law school and then they have to pass a very stringent bar examination, and when they pass that bar examination they are deemed qualified to practice before this Court.

"It is true that not all people immediately upon passing the bar are necessarily qualified trial lawyers, but Mr. Maines has been a trial lawyer for many years, is a very competent lawyer, knows what he is doing.

"Now, the way he proceeds in a trial might be different than 500 other

The court denied the request to remove Mr. Maines the public defender. Maines continued on with the cross-examination of the bar maid witness. The next day prior to taking any testimony, in the absence of the jury in the court's chambers Maines stated that the appellant wished to proceed with his motion to oust Maines as his defense counsel. The judge inquired of Foust if he so desired to proceed and Foust replied in effect that such was his desire. The judge in the absence of the jury called the witnesses named by appellant. Colleen Hickey was called, sworn and testified in effect that she and her mother had been in a restaurant close by earlier in the week (before the trial had started), and had overheard Maines say to some other men that he had the Foust case, that he did not want it but that he would take it to protect his record. Maines was sworn and testified that he did not recall making the statement attributed to him, but that he might have said something about not wanting the case. He knew, however, that he did not state that he was taking the case to protect any record. Further Maines stated that the case was assigned to him, that he would do his best to defend Foust and that he had prepared the case in the usual manner. No other witness was available at the time. The court then made a statement.[2]

---

lawyers may proceed, because every lawyer proceeds in his lawsuit in the manner he feels is to the best interests of his client, and he is proceeding with your lawsuit in what he considers to be your best interests.

"Now, his manner of presenting his case, if you had sat here as long as I have you would know as well as I do that this is a very favorable method of proceeding, and favorable with juries, and this is very important.

"Now, you have no way of judging the caliber, or what he is doing for you, but I do, and I feel your motion is very improperly taken. I feel you are very ably represented by Mr. Maines, and I am going to deny your motion. I will, however, reserve the right of this Court to inquire of the witnesses if there is any truth to the statement as you have asserted which might indicate that Mr. Maines was not interested in your case, but I would certainly then want to hear from Mr. Maines, whose judgment I rely on as a very competent and able member of this Court. Your motion is denied at this time. You will continue to be represented by Mr. Maines.''

[2] ''The Court is going to continue to deny the motion. I will, however, hear what the other witness, the mother of Colleen Sally Hickey, has to say when she appears here on Monday.

''There is nothing in the proceedings here before this Court to indicate in the slightest degree that Mr. Maines is not ably prepared and is not ably representing you.

''Mr. Maines is honest enough to relate that he doesn't remember precisely whether some offhand remark might have been made in a restaurant.

''This Court has been within the practice of law 17 years, and been on the bench about 2½ years now and knows that offhand remarks are made,

After the prosecution closed its case Mrs. Louise Hickey appeared in court and in the absence of the jury was sworn and made a statement to the effect that while with her daughter in a restaurant she had heard Maines say to some other men that he had the Foust case, that he did not want it but had taken it "to protect my record." The court after asking the lady some questions restated his ruling as theretofore made. The defense called several witnesses, the cause was argued and submitted and the jury returned with a verdict of guilty of murder in the second degree.

At the time of the motion for a new trial Maines argued for and convinced the judge to reduce the offense to voluntary manslaughter. The court made another statement with reference to the representation received by Foust.[3]

There is nothing before this court which might indicate in any respect whether Foust knew how to measure counsel's familiarity with legal procedure and the law.

 It is appropriately stated in *People* v. *Bourland,* 247 Cal.App.2d 76, 84-85 [55 Cal.Rptr. 357] : " 'It is well settled law that if a defendant, during the course of the trial, becomes

---

but that does not indicate, any such remark as this, that there would be anything less than the greatest of diligence in the preparation and advancement of your cause for the defense of this case, Mr. Foust.

"I might also say that the witness who appeared in this matter, Colleen Sally Hickey, made a very poor impression on the Court, and this Court would be very disinclined to believe any such statement of hers attributed to such a reputable member of the Public Defender's Office as Mr. Maines; that I could not give her testimony any weight to show an intendment of Mr. Maines that he has not got your interests at heart, as I have observed him to be a very dedicated attorney in the interests of all the defendants which he has represented in my court here over approximatly the past year in which he has appeared many, many times.

"The motion will be denied. Bring the jury back in."

[3] "THE COURT: Well, the Court wants to make some observations about this particular case so that its ruling may be made more clear.

"In the first place, we have the question as to whether or not defense counsel was adequately prepared, or wanted the case. I have heretofore ruled that I couldn't believe Colleen Hickey in her statements to the slightest degree. She is probably one of the worst witnesses I have ever seen on the stand, and one I certainly couldn't believe under any circumstances. Her mother no more impressed me than Colleen. She appeared merely to adopt what her daughter had stated.

"I found no lack of preparation or ability to represent the defendant in this case.

"What I did see, however, was a lack of communication brought about by the defendant's own conduct; his whining and crying, self-indulgence in this court made it, I would say, extremely difficult for any counsel of whatever caliber to adequately represent this defendant, who would like to think of himself as knowing what the law ought to be, or how he ought to be treated, or how we ought to regard what he did under these circumstances. This type of conduct on behalf of a defendant makes representation extremely difficult."

dissatisfied with the manner in which his counsel has handled his case and wishes to discharge counsel for that reason he has a constitutional right so to do [citation], subject to the supervisory powers of the trial court to see that such discharge does not result in an uninformed and unintelligent waiver of the right to counsel. [Fn. omitted.] [Citations]' [Citation.] There is, however, 'no constitutional right to an attorney who will conduct the defense of the case in accordance with an indigent defendant's whims.' [Citations.]

"A defendant's right to a court-appointed counsel does not include the right to require the court to appoint more than one counsel, except in a situation where the record clearly shows that the first appointed counsel is not adequately representing the accused.' "

Clearly the determination of the question of whether counsel is performing his duties in a competent manner in a trial involves an exercise of discretion by the trial judge and in the absence of a showing of abuse, such exercise of discretion should not be disturbed on appeal.

It is to be noted that Foust in this case made no claim or demand to represent himself. He was unhappy with Maines and wanted the judge to remove Maines and apparently then to appoint some other counsel.

Both appellant and respondent cite *People v. Taylor*, 259 Cal.App.2d 448, 451 [66 Cal.Rptr. 514]. In *Taylor* the court did say: "Had the request by defendant related only to the individual attorney assigned by the public defender's office and been substantiated by *any valid reason* of defendant, we have no doubt but that a different individual attorney from that office would have been made available." (Italics added.) The difficulty here is that appellant did not fortify his request with any valid reason. The court clearly disbelieved the two women, said so and observed that Maines was doing and did do an excellent piece of professional work in representing appellant in what could very well have resulted in a first degree murder verdict. In short the request was not substantiated in any respect.

*People v. Jackson*, 186 Cal.App.2d 307, at pp. 315-316 [8 Cal.Rptr. 849] discusses the legal relationship between an indigent defendant and his court-appointed attorney as follows: "By constitutional provision and statute an accused is guaranteed the right to be represented by counsel or to represent himself. [Citation.] However, this guarantee does not afford him the right to have his case presented in court *'both*

*by himself and by counsel* acting at the same time or alternating at' his pleasure. [Citations.] As a consequence, while represented by counsel 'he has no right to be heard by himself' and must abide his attorney's judgment in the premises. [Citation.] The law does not 'require that an intelligent, competent defendant who obdurately insists upon controlling and conducting his own defense should be entitled as a matter of right to the services of counsel to act under defendant's control.' [Citation.] The attorney is not required to accede to his client's wishes in a matter which experience, sound judgment, law or ethics direct are not consistent with his client's best interests. If the client does not wish to accept his attorney's judgment and abide by his advice, the alternative is for him to discharge his attorney and obtain another, or represent himself. [Citation.] Where the attorney is court-appointed the exercise of this alternative requires court action. The defendant must accept the attorney selected for him by the court in the exercise of a sound legal discretion; is not entitled to an attorney of his own choosing [citations]; in the absence of compelling reason, may not require the court to appoint another attorney for him; and is not entitled to a routine change of attorneys until he obtains one who is willing to subject his professional judgment to the judgment of his client, or who, perchance, is of the same opinion as the defendant with respect to matters of trial advantage, ethics or law. If the court does not believe that an indigent defendant is entitled to a change of attorneys, he must proceed with the attorney assigned to him, or waive his right to counsel and represent himself. Even the alternative is subject to court supervision, and before permission to do so is granted the court is duty bound to determine whether the defendant is making an intelligent and competent waiver. [Citations.]

"These requirements do not violate the defendant's constitutionally guaranteed right to the aid of counsel; nor do they deprive him of due process of law. They are invoked to insure a fair trial to both the defendant and the state; to safeguard a defendant against his own incompetence; to effect that administration of the law which must recognize not only the rights of the defendant but also his obligations to society, as well as the rights of society and its obligations to the defendant; to afford the defendant the benefit of every legal right and concurrently preserve to the court that virility essential to the discharge of its obligation to 'safeguard and promote the orderly and expeditious conduct of its business'

[citation] which is a law-imposed duty for the protection of both the defendant and society; to furnish an accused with legal counsel within the framework of the law and practical limitations; and to extend fair consideration to the court-appointed attorney as well as to the defendant he is assigned to represent.

"The fact that a defendant by the use of money, persuasion or promises, may obtain the services of an attorney who would do his bidding, whereas a defendant without these attributes must accept the judgment of an attorney who disagrees with him, does not render the trial in which he is engaged unfair or deprive him of due process of law."

Appellant seems to argue that he was entitled to the appointment of another attorney as a matter of right pursuant to the provisions of section 987a of the Penal Code. The argument is answered in *People* v. *Norman*, 252 Cal.App.2d 381, 402 [60 Cal.Rptr. 609], where the court said: "The provisions of the section preclude the appointment of other than the public defender in a county where there is a public defender, unless the specific exception of the statute is met. [Citation.] The contention, ' "The mere fact that an accused in a capital case lacked confidence in the public defender should be sufficient grounds standing alone to disqualify him" ' has been rejected as unsupported by the provisions of the section. [Citation.] A reading of the section indicates that the 'conflict' referred to is a conflict between the obligations the public defender may have to another and those which he would owe to the defendant if he chose to represent both parties. It does not refer to a conflict between the views of the defendant and the public defender in regard to the strategy to be adopted in presenting the defendant's case." (See also *People* v. *Williams*, 174 Cal.App.2d 364, 377, 378, 382 [345 P.2d 47].)

Our reading of the record in this case convinces us beyond any question that appellant received excellent representation in every respect and there is no merit to appellant's contention that he was poorly or inadequately represented. There was no abuse of discretion by the trial judge in denying appellant's motion to discharge appellant's appointed counsel.

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.