[Crim. No. 14119. In Bank. Feb. 26, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL JOHN MARSDEN, Defendant and Appellant.

## COUNSEL

Stephen H. Silver, under appointment by the Supreme Court, and Long & Levit for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Jerome C. Utz and Joyce P. Nedde, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**MOSK, J.**—On August 22, 1968, the District Attorney of Monterey County filed an information charging defendant and Laura Catheryn Repine with five counts of forgery, a violation of section 476 of the Penal Code. It was asserted that defendant and Miss Repine fraudulently cashed $100 money orders at five different motels in Monterey County on August 3 and 4. The money orders had been stolen from a grocery store and were cashed by means of fictitious identification. Defendant was arraigned on August 30, and the court appointed Michael Antoncich as defense counsel. Defendant pleaded not guilty, but was convicted on all five counts after a two-day jury trial. He was sentenced to the state penitentiary.

Defendant's only contention on this appeal is that he was deprived of his constitutional right to the effective assistance of counsel because the trial court denied his motion to substitute new counsel without giving him an opportunity to state the reasons for his request.

After the People completed the presentation of their case to the jury, the following colloquy occurred in the judge's chambers:

"THE DEFENDANT MARSDEN: I don't know how to go about making the motion, Your Honor, but I don't feel that I am being competently or adequately represented by counsel.

"THE COURT: All right. Any comment wished to be made by anyone else on this point? All right. Well, the comment has been made for the court so it's noted, it's on the record.

"THE DEFENDANT MARSDEN: Thank you.

"THE COURT: All right, that's all."

The next day at the instigation of the prosecutor the problem relating to defendant and his counsel was again raised in the judge's chambers and this colloquy ensued:

"THE COURT: The Court doesn't recall hearing a motion made or asking

any relief from the Court on the part of the defendant Marsden, that's why when he made his statement, the Court said your statement is noted in the record, however, in the interests of caution, the Court will consider it a motion that according to the defendant Mardsen he claims his attorney is not representing him properly and therefore the Court will infer that he wishes another attorney or wishes to represent himself, I don't know which. What do you say on that, Mr. Marsden?

"THE DEFENDANT MARSDEN: Yes, sir, I don't feel that I am getting adequately represented or competently represented, I'd like to make a motion.

"THE COURT: For what?

"THE DEFENDANT MARSDEN: For proper counsel. I'm not adequate to give it myself and I don't feel I'm being adequately represented. I think the transcript, court's transcript prior to this meeting here can reveal that fact."

The court then questioned Mr. Antoncich and established that he had represented defendant since his arraignment in municipal court, and that he had also represented Miss Repine until the time of arraignment in the superior court when separate counsel was appointed for her to avoid a possible conflict of interest between the two defendants. The judge proceeded to interrogate defendant as to his background and learned that defendant had served time for burglary and escape in the state prison, that he had never completed high school, that he received a certificate of completion of a high school equivalency course in the Marine Corps, and that he was working before his arrest as a mathematician operating and programming digital computers. Then this discussion occurred between the court and defendant:

"THE COURT: You seem to be [an] intelligent sort of a person. In the times you have been before the court have you been represented by an attorney?

"THE DEFENDANT MARSDEN: Yes, I have.

"THE COURT: And during these previous occasions when you have been represented by an attorney, have you ever discharged your attorney?

"THE DEFENDANT MARSDEN: No, I haven't.

"THE COURT: Have you ever represented yourself without an attorney in any of these prior proceedings?

"THE DEFENDANT MARSDEN: No, I haven't.

"THE COURT: Well, the Court denies the defendant's motion. The Court

feels Mr. Antoncich is alert and has raised questions during the course of this hearing that have been good questions to raise. The Court feels he has taken good care of his client to the present time, at least.

"THE DEFENDANT MARSDEN: Your Honor—

"THE COURT: (Interrupting) And so the Court—yes?

"THE DEFENDANT MARSDEN: Could I bring up some specific instances?

"THE COURT: I don't want you to say anything that might prejudice you before me as to the case, you see.

"THE DEFENDANT MARSDEN: I don't think it would.

"THE COURT: I don't want to take that chance.

"There are lots of times when a person—lots of times, and I emphasize that, where a defendant is represented by an attorney where he has just sufficient knowledge to be ignorant and lots of times people want to tell their attorneys how to run a case, which they are not qualified to do. I think possibly you are a bright person and who thinks a case should be conducted in a certain way, which you are not qualified to determine.

"THE DEFENDANT MARSDEN: Your Honor.

"THE COURT: Therefore the Court denies the motion. The Court is not going to have a case that has—where the prosecution has been completed and then a person raises this sort of thing where the Court doesn't feel it's appropriate. If this were done, and the Court has this type of thing come up from time to time, you never could complete a case, you'd get in the middle of the case, a defendant, particularly a bright one, raises some question and you never could come to the completion of a trial.

"THE DEFENDANT MARSDEN: Your Honor, I believe I can show cause. Would the Court show me how I could go about doing this?

"THE COURT: The Court—

"THE DEFENDANT MARSDEN: (Interrupting) I'm ignorant of the law.

"THE COURT: That's right, that's why you have lawyers. Mr. Marsden, the Court is prohibited from giving legal advice to people, so I can't advise you as to legal procedures. I commit a misdemeanor, a criminal offense, if I give legal advice to anybody, whether defendant or anyone else. That's all for this matter, the jury is waiting."

██ Defendant now contends that the denial of the motion for substitution of attorneys, without giving him an opportunity to enumerate specific examples of inadequate representation, deprived him of a fair trial.

■ We start with the proposition in *Gideon* v. *Wainwright* (1963) 372 U.S. 335 [9 L.Ed.2d 799, 83 S.Ct. 792, 93 A.L.R.2d 733] that criminal defendants are entitled under the Constitution to the assistance of court-appointed counsel if they are unable to employ private counsel. However, the decision whether to permit a defendant to discharge his appointed counsel and substitute another attorney during the trial is within the discretion of the trial court, and a defendant has no absolute right to more than one appointed attorney. ■ "A defendant's right to a court-appointed counsel does not include the right to require the court to appoint more than one counsel, except in a situation where the record clearly shows that the first appointed counsel is not adequately representing the accused. . . . ■ 'The right of a defendant in a criminal case to have the assistance of counsel for his defense . . . may include the right to have counsel appointed by the court . . . discharged or other counsel substituted, if it is shown . . . that failure to do so would substantially impair or deny the right . . . , but the right to such discharge or substitution is not absolute, in the sense that the court is bound to accede to its assertion without a sufficient showing . . . that the right to the assistance of counsel would be substantially impaired . . . in case the request is not granted, and within these limits there is a field of discretion for the court.' " (*People* v. *Mitchell* (1960) 185 Cal.App.2d 507, 512 [8 Cal.Rptr. 319], quoting 157 A.L.R. 1225, 1226; see *People* v. *Foust* (1968) 267 Cal.App.2d 222, 228 [72 Cal. Rptr. 675]; *In re Bunker* (1967) 252 Cal.App.2d 297, 311 [60 Cal.Rptr. 344]; *People* v. *Bourland* (1966) 247 Cal.App.2d 76, 84-85 [55 Cal.Rptr. 357]; *People* v. *Jackson* (1960) 186 Cal.App.2d 307, 315 [8 Cal.Rptr. 849].)

Defendant properly contends that the trial court cannot thoughtfully exercise its discretion in this matter without listening to his reasons for requesting a change of attorneys. A trial judge is unable to intelligently deal with a defendant's request for substitution of attorneys unless he is cognizant of the grounds which prompted the request. The defendant may have knowledge of conduct and events relevant to the diligence and competence of his attorney which are not apparent to the trial judge from observations within the four corners of the courtroom. Indeed, "[w]hen inadequate representation is alleged, the critical factual inquiry ordinarily relates to matters outside the trial record: whether the defendant had a defense which was not presented; whether trial counsel consulted sufficiently with the accused, and adequately investigated the facts and the law; whether the omissions charged to trial counsel resulted from inadequate preparation

rather than from unwise choice of trial tactics and strategy." (*Brubaker* v. *Dickson* (9th Cir. 1962) 310 F.2d 30, 32.) ■ Thus, a judge who denies a motion for substitution of attorneys solely on the basis of his courtroom observations, despite a defendant's offer to relate specific instances of misconduct, abuses the exercise of his discretion to determine the competency of the attorney. A judicial decision made without giving a party an opportunity to present argument or evidence in support of his contention "is lacking in all the attributes of a judicial determination." (*Spector* v. *Superior Court* (1961) 55 Cal.2d 839, 843 [13 Cal.Rptr. 189, 361 P.2d 909].)

■ The People contend that there was no need to hear the defendant's examples of misconduct because he had limited the scope of his motion to the record before the court when he stated, "I think the transcript, court's transcript prior to this meeting here can reveal that fact." The People thus presume the defendant was referring to the reporter's transcript and was concerned only with occurrences within the trial judge's presence. However, such deduction disregards the defendant's lay status and his admitted ignorance of the law. His reference to the "transcript" may have been his fumbling method of describing the totality of occurrences in the course of his trial, and not a specific use of a term of art. The semantics employed by a lay person in asserting a constitutional right should not be given undue weight in determining the protection to be accorded that right. Indeed, the very reason we are compelled to resort to speculation as to the defendant's understanding of the word "transcript" is that he was not permitted to explain his meaning and to proceed with enumeration of asserted instances of inadequate representation. Such an explanation would have enabled the trial court to determine the extent to which defendant's claims were reflected in the "court's transcript." As it stands, we are unable to determine the basis for the defendant's motion or whether the defendant's showing could have been sufficient to justify ordering a substitution of attorneys.

Moreover, it is possible that defendant's reference to the transcript was designed to indicate significant omissions, such as failure to call percipient witnesses or to adequately cross-examine witnesses concerning bias or details not previously related. The trial judge would be no better equipped to determine the validity of such claim of inadequate representation than he would be to review any other out-of-court events, unless the defendant were permitted to explain the reasons for asserting his attorney's incompetence.

Further support for the defendant's contention that it was error to deny his motion without an opportunity for explanation comes from the line of authority beginning with *People* v. *Youders* (1950) 96 Cal.App.2d 562, 569 [215 P.2d 743]. (See, e.g., *People* v. *Monk* (1961) 56 Cal.2d 288, 299 [14 Cal.Rptr. 633, 363 P.2d 865]; *People* v. *Prado* (1961) 190 Cal.App.2d

374, 377 [12 Cal.Rptr. 141]; *People* v. *Hood* (1956) 141 Cal.App.2d 585, 589 [297 P.2d 52].) These cases hold that claims of incompetency of trial counsel must be raised by defendant at trial and generally may not be raised for the first time on appeal. "If defendant felt his counsel did not adequately represent him he should have complained to the trial court and given that court an opportunity to correct the situation. In the absence of such complaint the acts of defendant's counsel are imputed to him." (*People* v. *Youders* (1950) *supra,* 96 Cal.App.2d 562, 569.) If a defendant is required to complain of error at trial so that the error can be corrected at that level, he should be given ample opportunity to explain and if possible to document the basis of his contention. A right is vacuous indeed if it must be asserted at trial but may not be supported before the trial judge by more than the bare complaint.

We are unmoved by the rationale of the trial judge for his unwillingness to hear the defendant's basis for dissatisfaction with counsel. An expressed concern that defendant's evidence might "prejudice you before me as to the case," lacks substance. In a jury trial it is difficult to comprehend how a defendant's statement made out of the presence of the jury to support his claim that his counsel is inadequate could adversely affect a judgment on the merits of the case. During most trials, judges hear numerous motions and argument in chambers dealing with prior convictions, the voluntariness of confessions, the admissibility of evidence, and other procedural matters, without permitting such proceedings to jaundice their views on ultimate conclusions. Furthermore, if there were some remote prejudicial effect, it would be outweighed by the importance of replacing an incompetent attorney.

The trial judge also indicated that he was precluded by law from advising defendant how he might successfully show cause to justify the replacement of trial counsel. "[T]he Court is prohibited from giving legal advice to people, so I can't advise you as to legal procedures. I commit a misdemeanor, a criminal offense, if I give legal advice to anybody, whether defendant or anyone else." We are referred to no statute or authority which precludes a judge from advising a defendant as to the procedures for effectively challenging the competence of his attorney, and research has disclosed none. To the contrary, in *People* v. *Redmond* (1969) 71 Cal.2d 745, 758 [79 Cal.Rptr. 529, 457 P.2d 321], this court commended judges who consider it part of the judicial function to aid and advise defendants appearing before them without counsel. "Although a trial judge may not be required to aid a defendant who represents himself, it is a common practice in both civil and criminal cases for trial judges, by advice and suggestion, to assist persons who represent themselves. . . . It is in the highest tradition of

American jurisprudence for the trial judge to assist a person who represents himself as to the presentation of evidence, the rules of substantive law, and legal procedure, and judges who undertake to assist, in order to assure that there is no miscarriage of justice due to litigants' shortcomings in representing themselves, are to be highly commended."

In the case at bar, although defendant was represented by counsel, he was groping for the proper manner in which to demonstrate the alleged lack of competence of his attorney, and the trial judge would have been well within the bounds of judicial propriety in giving any helpful suggestion which might have aided defendant in the presentation of his complaint. Furthermore, the judge was not being called upon to offer advice, but only to listen to defendant's reasons for requesting different counsel.

Finally, we reach the question whether the error in the trial court was prejudicial to defendant. There can be no doubt it was. On this record we cannot ascertain that defendant had a meritorious claim, but that is not the test. Because the defendant might have catalogued acts and events beyond the observations of the trial judge to establish the incompetence of his counsel, the trial judge's denial of the motion without giving defendant an opportunity to do so denied him a fair trial. We cannot conclude beyond a reasonable doubt that this denial of the effective assistance of counsel did not contribute to the defendant's conviction. (*Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065].)

The judgment is reversed.

Tobriner, Acting C. J., Peters, J., Burke, J., Sullivan, J., and Molinari, J.,* concurred.

McCOMB, J.—I dissent. I would affirm the judgment for the reasons expressed by Mr. Justice Caldecott in the opinion prepared by him for the Court of Appeal, First District, Division Three (*People* v. *Marsden*, 1 Crim. 7601, filed October 10, 1969, certified for nonpublication).

---

*Assigned by the Chairman of the Judicial Council.