[Crim. No. 16069. Second Dist., Div. Five. June 30, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIE HAYWARD WESTON, JR., Defendant and Appellant.

**COUNSEL**

Howard C. McArdle, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Jeffrey T. Miller, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**KAUS, P. J.**—Defendant appeals from a judgment of conviction on a three count information charging him with robbery committed on February 14, 1968, (count I), robbery committed on January 13, 1968, (count II) and possession of marijuana at the time of his arrest on March 27, 1968, (count III).

The public defender was appointed at the time of the arraignment on May 8, 1968. The public defender acted as defendant's counsel when defendant pleaded not guilty and when a motion to suppress under section 1538.5 of the Penal Code was made. He continued to act on behalf of defendant when, on August 14, witnesses in support of and in opposition to the motion were heard, the motion was denied, and jury trial was waived. The matter then proceeded on the merits. The two victims of the robberies and one eyewitness were examined by the People and cross-examined by the defense. All three witnesses positively identified defendant. There was no hint of any friction between defendant and his counsel. At the close of the August 14 session the defendant requested and received permission to make two telephone calls "to get some witnesses in."

The next day, August 15, just before the People called their last witness, the arresting officer, defendant requested permission to represent himself and the discussion set forth in full in the footnote took place.[1] The request

---

[1]"THE DEFENDANT: I would like to respectfully move to be in pro per. I would like the record to show this. THE COURT: Uh huh. THE DEFENDANT: And I would like some of the cases, the People against Monk and People vs. Ruiz. And I don't feel that I was adequately represented at this particular time. I feel I could do better on my own. So I would like to get a continuance. THE COURT: Well, what you are asking is to represent yourself? THE DEFENDANT: Yes, sir. THE COURT: And the Court is not allowed to do this unless he is satisfied that you are capable to represent yourself. THE DEFENDANT: Yes, sir. THE COURT: Let me ask you this: You are not a lawyer and you haven't graduated from a college, have you? Have you graduated from high school? THE DEFENDANT: No, I haven't graduated from a college, Your Honor. THE COURT: Have you graduated from high school? THE DEFENDANT: Yes, Sir. THE COURT: Where did you go to school? THE DEFENDANT: Freemont High School. THE COURT: In what year did you graduate? THE DEFENDANT: '65 or '64, one. THE COURT: And how old are you now? THE DEFENDANT: I am 20. Turned 20 July 27th. THE COURT: And have you ever defended yourself before this Court? THE DEFENDANT: No, your Honor. THE COURT: Well, it would be a mistake for me to allow you, I think, to represent yourself. THE DEFENDANT: Well, your Honor, I don't feel like I am fully represented at this particular time. THE COURT: Well, this may be so. You may be a competent lawyer, but I won't allow you to represent yourself unless I believe that you are trained sufficiently in the law to represent yourself. I mean, I would be reversed. The case would be reversed if I let you go ahead on your own and you were convicted or acquitted. If you were acquitted, it can't be reversed because once the defendant wins, it can't be appealed by the District Attorney, but if you lose, it could be appealed by you because you could complain that you shouldn't have been allowed to represent yourself and the higher court would

was denied. No defense was presented. Eventually defendant was convicted on all counts, the court finding the robbery charged in count I to have been of the second degree and the robbery charged in count II to have been of the first degree.

Sometime between the day on which defendant was found guilty and his motion for new trial on September 5, 1968, he was given permission to represent himself in another case. He was acquitted. Defendant was then permitted to represent himself at the motion for a new trial in this case. In support of his claim that he had been inadequately represented at the trial, the deputy public defender who had then represented him was called as a witness. The motion was denied.

On appeal defendant contends that: (1) he should have been permitted to represent himself when he requested permission to do so; (2) he received a constitutionally inadequate defense from the public defender; and (3) the evidence does not support his conviction on count II.

## I.

■ If defendant had requested to be permitted to represent himself at the outset of the proceedings, it is manifest that the court's conclusion that he lacked the ability to do so was reached without an adequate canvass of defendant's competency. (*People* v. *Carter,* 66 Cal.2d 666, 672-673 [58

agree. THE DEFENDANT: I am waiving my right to counsel. THE COURT: You can't waive that. You have to be represented by counsel, unless you are competent to represent yourself. THE DEFENDANT: Well, who is going to represent me? THE COURT: The District Attorney—the Public Defender. THE DEFENDANT: He is not my Public Defender as of now. THE COURT: You can't get rid of him. THE DEFENDANT: Why is it, your Honor? THE COURT: Because the law says you have to be represented. THE DEFENDANT: All right. I would still like my motion to the Court. I don't feel like I am adequately represented at this particular time and the Court said that *the defendant may, at any time during trial that his counsel is not adequately representing him, thereby affording the Court the opportunity to correct the situation.* But if the defendant fails to avail himself of this privilege at trial level, he cannot ordinarily, after adverse judgment, first complain of the matter. [Note by this court: the italicized portion of this statement is not a reminder to the trial court of some previous promise it made, but a quote from *People* v. *Monk,* 56 Cal.2d 288, 299 [14 Cal.Rptr. 633, 363 P.2d 865].] THE COURT: You have made the motion. If you could show to me that you were capable, and I would have refused, then it would be grounds for appeal. But you are not capable. THE DEFENDANT: I know the seriousness of my crimes, your Honor. THE COURT: That may be, but you don't know enough about how courts operate and you are only 20 years old. You have never—so let us proceed. You made the motion on the record and if I have made a mistake, you can complain of this later. You have protected your rights to that extent. THE DEFENDANT: Yes. THE COURT: Now, we will proceed and I order him to continue to represent you. THE DEFENDANT: All right. THE COURT: Because I find that you are not capable to represent yourself, even though you may believe and wish to represent yourself. Let us proceed then. MR. HILL: I would like to say for the record, Mr. Marcario is a very worthy opponent. THE COURT: Well, let us proceed."

Cal.Rptr. 614, 427 P.2d 214]; *People* v. *Addison,* 256 Cal.App.2d 18, 23-25 [63 Cal.Rptr. 626].)[2] Here, however, the request was not made until the second day of trial, when all but one of the People's witnesses had testified. It purported to be motivated by inadequate representation, but no specifications of the charge against the deputy public defender were ever offered.[3] The question therefore is whether the trial court was bound to interrupt the proceedings and determine the competency of defendant to represent himself, where the request to be permitted to do so was made in the middle of the trial and accompanied by nothing but a general complaint of inadequate representation.

The game of "waive the lawyer" is one in which the accused has little to lose and the People nothing to gain.[4] Among sophisticated defendants, an

---

[2]During the argument on the motion for new trial, the court apparently agreed with this observation and at first granted the motion, based on defendant's intervening showing of competency during the trial in which he was acquitted. However, it appears that when the court made that ruling it thought that defendant had made the request to be permitted to represent himself at the outset of the trial. When it was brought to the court's attention that defendant had waited until certain witnesses had testified, it reversed itself.

[3]Quite recently, in *People* v. *Marsden,* 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44], a judgment was reversed because the trial court refused to listen to proffered specific reasons in support of a motion to have different counsel appointed. (Cf. *People* v. *Johnson,* 241 Cal.App.2d 423, 425-439 [50 Cal.Rptr. 598].) We do not interpret the colloquy between defendant and the trial court in this case as coming within the ambit of *Marsden.* At no point did the court prevent defendant from offering a specific charge of incompetence. It merely told defendant, after he had had his say, that he would have to proceed with his then attorney. Moreover, as we shall see, at his motion for a new trial defendant was given a further full opportunity to support his charge of incompetence and, as we shall also see, his claim lacked substance. Finally it would have been quite uncharacteristic of this particular judge to refuse to listen to anything defendant wanted to bring up. He devoted (see fn. 7, *infra*) almost a full court day to defendant's motion for a new trial, thoroughly investigating claims of error which many other judges would have brushed off summarily.

[4]We can take judicial notice (*Denham* v. *Superior Court,* 2 Cal.3d 557, 565 [86 Cal.Rptr. 65, 468 P.2d 193]) that in case after case the obvious purpose of the defendant's request to be permitted to represent himself is not a sincere desire that the motion be granted, but rather the hope that it will be granted or denied after an inadaquate inquiry concerning the defendant's competency to waive counsel or that, if the inquiry is sufficiently exhaustive, the court will make a ruling which a higher court will, later on, find to have been erroneous. Analytically the defendant's chances look like this: if the inquiry into his competency to waive counsel is inadequate, then whatever ruling the court makes is wrong. (*People* v. *King,* 276 Cal.App.2d 781 [81 Cal.Rptr. 336]; *People* v. *Addison,* 256 Cal.App.2d 18 [63 Cal.Rptr. 626].) If the inquiry is adequate and the defendant appears competent to an appellate court, but incompetent to the trial court and counsel is not discharged, there is also error. (*People* v. *Ruiz,* 263 Cal.App.2d 216, 225-228 [69 Cal.Rptr. 473].) If the defendant, after such an inquiry, appears competent to the trial court, but incompetent to an appellate court and has been permitted to represent himself, a reversal will follow. (Cf. *People* v. *Robles,* 2 Cal.3d 205, 218-219 [85 Cal.Rptr. 166, 466 P.2d 710].)

attempt to waive the right to counsel at some stage of the proceeding has become a routine ploy. Trial judges complain with some justification that the decisions by which their rulings on such applications are judged have put them into the metaphorical opposite of a strait jacket which is a garment designed to make it impossible for the wearer to do anything wrong. If we held that, on pain of reversal, the court must stop a trial dead in its tracks when a defendant wants "to go pro per," although he gives no adequate reason for such a demand, we would do nothing but add a joker to a hand that already contains four aces.

We are aware of the fact that it has repeatedly been said that "[i]t is well settled law that if a defendant, during the course of the trial, becomes dissatisfied with the manner in which his counsel has handled his case and wishes to discharge counsel for that reason he has a constitutional right so to do [citation], subject to the supervisory powers of the trial court to see that such discharge does not result in an uninformed and unintelligent waiver of the right to counsel." (*People* v. *Johnson, supra,* 241 Cal.App.2d at p. 437, see also *People* v. *Monk,* 56 Cal.2d 288, 299 [14 Cal.Rptr. 633, 363 P.2d 865]; *People* v. *Foust,* 267 Cal.App.2d 222, 227-228 [72 Cal. Rptr. 675]; *People* v. *Bourland,* 247 Cal.App.2d 76, 84 [55 Cal.Rptr. 357].) In none of these cases, however, was it actually held to have been error to refuse to conduct a hearing on the defendant's competency on a bare claim of inadequate representation. In *Monk* the claim of inadequate representation was held to have been asserted too late. In *Foust* the defendant never did ask to be permitted to represent himself and apparently wanted another attorney appointed. The case merely held that the trial court correctly determined that his attorney was competent. The question of determining the defendant's competency, therefore, never came up. In *Bourland* the claim was that defendant had been permitted to represent himself without an adequate inquiry into his competency. The court had, however, appointed a public defender to assist him, and the judgment was affirmed on the basis that the assistance had ripened into representation. In

Only if counsel is not discharged if the defendant appears to be incompetent to both the trial and appellate courts or if the defendant is permitted to represent himself and appears to be competent to both courts, will the ruling be upheld. (*People* v. *Vaughn,* 71 Cal.2d 406, 418-420 [78 Cal.Rptr. 186, 455 P.2d 122]; *People* v. *Durham,* 70 Cal.2d 171, 191 [74 Cal.Rptr. 262, 449 P.2d 198].) Thus four out of the six possible results of an application to be permitted to waive the right to counsel lead to reversal. Nor are the two rulings which are not erroneous really harmful to the defendant: Objectively, an incompetent defendant can hardly complain that he is represented by counsel; as far as the competent defendant whose application was properly granted is concerned, he can always change his mind and it would take an extremely courageous judge to deny him legal representation. We do not fear that this publication of the odds will add to the trial courts' problems by causing additional hundreds of defendants who read advance sheets and their pupils to try and waive their right to counsel. It seems that, if anything, they are ahead of us—not vice versa.

*Johnson* the judgment was reversed because the trial court had not permitted the defendant to specify his reasons for wanting to fire his attorney, but had ordered him gagged instead.

Finding no authority to the contrary we hold that if a defendant, after the start of a trial in which he is represented by counsel, desires to represent himself and no adequate reason for the desired change in representation is given, it is not incumbent on a trial court to stop the proceedings for the purpose of determining whether the defendant is competent to act as his own attorney. (See also *People* v. *Bonville,* 267 Cal.App.2d 4, 7-8 [72 Cal.Rptr. 592].)

Without intending to weaken this holding, we do note that lost in the colloquy between the court and defendant there is a stray request for a continuance. Even if the trial court had determined, after proper inquiry, that defendant was competent to represent himself, it would have been entitled to find that the condition on which self representation was requested would have been a "disruption of the orderly processes of justice unreasonable under the circumstances of the particular case." (*People* v. *Crovedi,* 65 Cal.2d 199, 208 [53 Cal.Rptr. 284, 417 P.2d 868]; see also *People* v. *Durham,* 70 Cal.2d 171, 191 [74 Cal.Rptr. 262, 449 P.2d 198].)

## II.

At his motion for a new trial defendant was given every latitude to prove ineffective representation at the trial. The deputy public defender who had represented him was sworn as a witness. In response to a question by the district attorney[5] the deputy testified that the fact that certain witnesses were not subpoenaed for the trial was "based upon a discussion of the case with Mr. Weston and how we would handle the case on the date of trial." It was his firm conclusion as an attorney not to call these witnesses. Defendant then started to examine the deputy who testified that his reason for not calling the witnesses was not that he thought they would either hurt or help the defendant. He had not subpoenaed them and could not recall whether he talked to them over the telephone or whether he sent an investi-

---

[5]In his written notice of motion for a new trial defendant, at last, specified his reason for claiming ineffective representation, namely that he had informed the public defender "of certain witnesses who had knowledge of the defendant's movements on the nights in question, and also giving [him] a list containing the witnesses [*sic*] names and addresses." Before the deputy testified, defendant, unsworn, amplified this by stating that he had given the deputy the names of three persons whose last name was Weston who would have testified that he never left his home on February 14. He also claimed that he could prove that on January 13 he had been in jail. He did not claim having told his attorney about that. The attorney was very reluctant to testify, stating he could not do so "without revealing things that would be detrimental to Mr. Weston's defense." Defendant eventually waived the attorney-client privilege.

gator to talk to them. Significantly defendant never asked him for his true reason for not calling the witnesses.

No incompetence whatever was shown. All that the trial court knew is that the defendant gave his lawyer the names and addresses of certain witnesses, whom the lawyer did not subpoena and possibly did not even interview and that his reason for not subpoenaing them was neither a belief that they would hurt his client, nor a hope that they would help him. The proposed witnesses apparently would have testified to an alibi. (See fn. 5, *supra.*)

The record reeks with the suggestion, strongly reinforced by defendant's failure to inquire into the deputy's real reason for not calling the witnesses, that defendant had furnished him with names of two supposed alibi witnesses, indicating at the same time that they were willing to perjure themselves to support a defense. Naturally, if that was the case, the deputy was under no duty even to talk to the witnesses. (*In re Branch,* 70 Cal.2d 200, 210-211 [74 Cal.Rptr. 238, 449 P.2d 174].) If we are wrong in our surmise, still it was the defendant's burden to prove ineffective representation, not the People's to disprove it. (*People* v. *Reeves,* 64 Cal.2d 766, 774 [51 Cal.Rptr. 691, 415 P.2d 35].)

### III.

■ The claim that the evidence is insufficient to support the conviction on count II rests on a slim reed indeed.

Count II charged defendant with a robbery on January 13, 1968. The victim was a gas station attendant who fully identified defendant as the person who robbed him of $200 at gun point some time during his shift between midnight and 9 a.m. The exact time of the robbery was never established. After the robbery was complete the victim fired his gun at defendant and defendant fired back. Both missed. No other evidence was offered by either side.

Later, after defendant's motion for a new trial was denied and the court was going over defendant's probation report, the court's attention was drawn to an arrest of defendant which took place on January 13, 1968; defendant was released on January 25. Defendant agreed that he had been arrested on January 13. In an ambiguous sort of way he then again (see fn. 5, *supra*) claimed that that arrest had taken place before the gas station robbery. The court then instituted an informal inquiry with the police precinct station where defendant had been detained. The district attorney returned with a report to the effect that the arrest had taken place at 12:10 p.m., while a review of the "reports and transcript" showed that the robbery

had taken place at 2:30 a.m. Using somewhat faulty arithmetic he advised the court that the arrest had succeeded the robbery by eight hours. The following colloquy then ensued: "THE COURT: The 25th. THE BAILIFF: He was *released* on the 13th of January. THE COURT: What time? THE BAILIFF: At 11:25 a.m. and booked at 12:10 p.m. This is after noon. MR. BURNETT: 11:25 a.m.? THE BAILIFF: Yes, and booked at 12:10 p.m." (Italics added.)

Defendant now argues, in effect, that he must have been in jail at the time of the robbery if he was released at 11:25 a.m. While even that conclusion is hardly compelling, it is perfectly obvious that everybody was talking at once and the reporter apparently did not get everything down right.[6] Certainly the court did not understand whatever it was told as indicating anything inconsistent with a robbery in the early morning hours of January 13.[7]

The judgment is affirmed.

Aiso, J., and Reppy, J., concurred.

---

[6]Perhaps the simplest way to read some sense into the conversation is to suppose that the bailiff did not say that defendant was "released" on January 13 but that he was "arrested" on that day.

[7]"THE COURT: I just wanted to make sure if there was an alibi. If he was in jail at the time of the alleged robbery, certainly I would dismiss the charges; however, it appears that the alleged robbery occurred many hours before the arrest of the Defendant. Is that right? MR. BURNETTS [Deputy District Attorney] Yes, Your Honor. THE COURT: So that the fact that he was in jail at noon is not proof that he didn't commit the robbery earlier in the morning. Let the record show that we have been dealing with this young man's problems since about 10:30 or 11:00 in the morning, and it's now after four in the afternoon, recessing from time to time to go down side alleys. I see no reason, then, to dismiss Count Two, the latest bit of searching, and I had my Bailiff, Mr. John Sherman, also check, as well as the District Attorney, who did check and report a moment again as to the January 13th problem."