Filed 11/13/15  P. v. Mendoza CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　　　v.<br><br>TORIBIO ALEJO MENDOZA,<br><br>　　Defendant and Appellant. | F068930<br><br>(Super. Ct. No. F12300595)<br><br>**OPINION** |

-ooOoo-

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Fresno County.  Hilary A. Chittick, Judge.

David Y. Stanley, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the State Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

[*]　　Before Levy, Acting P.J., Poochigian, J. and Peña, J.

Toribio Alejo Mendoza was convicted of numerous crimes as the result of two separate incidents that occurred on the same day. The victims were Mendoza's sister's landlord and Mendoza's mother. In addition, numerous enhancements were found to be true, including firearm enhancements and four prior convictions that constituted strikes within the meaning of Penal Code section 667, subdivisions (b)-(i).[1] The third strike sentence will likely result in Mendoza's incarceration for the rest of his life.

Appellate counsel filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 asserting he did not identify any arguable issues in this appeal. By letter dated September 24, 2014, we invited Mendoza to inform the court of any issues he wished us to address. Mendoza did not respond to our letter.

After thoroughly reviewing the record, we conclude there are no arguable issues in this case and affirm the judgment.

## FACUTAL AND PROCEDURAL SUMMARY

### *The Information*

The information charged Mendoza with false imprisonment (§ 236, count 1), two counts of making a criminal threat (§ 422, counts 2 and 5), two counts of possession of a firearm by a felon (§ 29800, subd. (a)(1), counts 3 and 8), kidnapping by force or fear (§ 207, subd. (a), count 4), assault with a firearm (§ 245, subd. (a)(2), count 6), and attempted second degree robbery (§§ 211, 664, count 7). The information also alleged the following enhancements: (1) counts 1, 2, 5, and 6 alleged Mendoza personally used a firearm within the meaning of section 12022.5, subdivision (a); (2) counts 4 and 7 alleged Mendoza personally used a firearm within the meaning of section 12022.53, subdivision (b); (3) as to all counts, Mendoza had four prior convictions which constituted strikes within the meaning of section 667, subdivisions (b)-(i); and (4) Mendoza had served three prior prison terms within the meaning of section 667.5, subdivision (b).

---

[1] All statutory references are to the Penal Code unless otherwise stated.

*The Evidence*

Reyes Salas Barrientos is in charge of a residential property in Mendota. The property has two houses on it. On the date in question, he had received a call from the tenant of the back house, Nayomy Mendoza, asking him to come by and pick up the rent.[2] Barrientos drove to the house with his wife and children.

When Barrientos left his vehicle to approach the house, he saw Mendoza, who signaled to Barrientos to stop. Barrientos understood the signal to mean that he should wait where he was for the money. Barrientos waited for a few minutes, and when no one came he walked towards the front of the house. He then spotted Mendoza standing next to a vehicle with a woman inside the vehicle. Barrientos approached the vehicle and asked Mendoza for Nayomy. Mendoza did not say where Nayomy was, so Barrientos turned to leave. Mendoza ordered him to stop and pulled Barrientos towards the car. When Barrientos turned, Mendoza displayed a gun and ordered Barrientos over to the vehicle. Mendoza said he was going to kill Barrientos and the woman in the car. Mendoza repeatedly asked Barrientos if he knew the woman in the vehicle, to which Barrientos replied that he did not. Mendoza threatened to take Barrientos's vehicle after he killed the woman and Barrientos.

At this time another vehicle approached the house, stopped, and a person got out and knocked on Nayomy's door. Apparently Nayomy answered the door, and when she did she saw Barrientos's vehicle. Nayomy then came around the house and approached Barrientos and Mendoza. Mendoza put the gun back in his waistband. Nayomy spoke to Mendoza in English, so Barrientos did not know what was said. Nayomy had Barrientos follow her to her house so she could pay the rent. Barrientos told Nayomy about Mendoza's threats. Barrientos then left the property and drove home.

---

[2] Nayomy Mendoza is Mendoza's sister. We will refer to her by her first name to avoid confusion. No disrespect is intended.

As Barrientos and his family began unloading the vehicle, Barrientos saw Mendoza and the girl walking towards his house. Barrientos ordered his wife and children into the house and then went to his bedroom to retrieve his pistol. When Barrientos exited his house, he did not see Mendoza, so he got into his vehicle to find a police officer.

Perla Diaz, who lives directly across the street from Barrientos, testified that on the day in question she saw a man walk by the house across the street from her house. As he was walking, he pulled a gun out of his waistband and pointed it at a girl. Diaz was not able to identify the man with the gun, either to the police or at trial.

Nayomy testified that she lived in the house in question, and Mendoza was living with her at the time. On the day in question she called Barrientos to come by and pick up the rent. A short while later she heard people talking by an abandoned van. Barrientos was telling her brother and his friend, Anna, to get out of the van. She paid Barrientos money for rent, but did not recall how much she paid him. She did not see a gun in her brother's hands that day, nor did she see him leave after she paid Barrientos the rent. Nayomy admitted she told the police her brother had a gun that day, but she was lying. She lied because she was upset with her brother.

Juanita Chavez, Mendoza's mother, was called as a witness for the prosecution. Chavez could not recall ever talking to a police officer about Mendoza threatening her with a gun if she did not give him money.

Martha Rodriguez, a detective corporal with the Mendota Police Department, interviewed Nayomy a few days after the incident between Mendoza and Barrientos. Nayomy stated she had called Barrientos to come pick up a partial payment of her rent. When Nayomy came out of the house, Mendoza was arguing with Barrientos. Nayomy saw a black handgun in Mendoza's waistband. After Barrientos left, Mendoza punched and pushed his companion (Annie Meza). Mendoza left the property because he knew Nayomy was going to call the police.

4.

Rodriguez met with Chavez after meeting with Nayomy. Chavez told Rodriguez that two days prior, the same day as the incident between Mendoza and Barrientos, she was resting in her bedroom when Mendoza came in demanding $5,000. Mendoza pointed a black handgun at Chavez, continued to demand money, and threatened to kill Chavez and her husband. At some point, Mendoza told her she could sell or pawn her truck to raise money for him. Chavez, Mendoza, and Annie Meza got into the truck and drove to the home of a person who takes items in exchange for money. Chavez and Meza went to the door of the home. The lady was not home.

The three then drove to some water pumps located next to a park. During the drive to the water pumps, Mendoza repeatedly struck Chavez on the legs. At some point Mendoza again pointed the gun at Chavez and struck her in the face.

The three then returned to the house of the lady who buys things, but she was still not at home. Mendoza then drove them back out to the water pumps. Mendoza said he was going to kill Chavez. Mendoza pulled Chavez out of the vehicle, put her on her knees, and told her to beg for his forgiveness. Mendoza then spit on her face. At some point Mendoza attempted to choke Chavez. Mendoza finally stated he was hungry, so Chavez convinced him to drive back to her house so she could feed him. On the way back, Mendoza noted the vehicle was low on gas. Chavez told him they could go home and she would get $100 from her husband to buy gas. When they arrived at Chavez's home, Chavez and Meza went inside and Mendoza remained in the vehicle. Chavez told her husband to open the rear sliding door, and when he did so she pushed Meza out of the way and ran out the door. Chavez ran to another home, where she called the emergency operator.

5.

Mendota Police Officer Hector Lizarraga[3] responded to Chavez's call to the emergency operator. Chavez related essentially the same story as she told Rodriguez a few days later.

When Mendoza was arrested a few days later in Fresno, he had a semiautomatic handgun in his possession. When questioned, Mendoza admitted he had the firearm in his possession, and stated he had it for protection because he was not from the area where he was arrested.

### *The Verdict and Sentencing*

The jury found Mendoza guilty of each charged crime and found each firearm enhancement true. The trial court, in a bifurcated proceeding, found each prior conviction and prior prison allegation true. It then sentenced Mendoza to (1) a determinate term of 13 years, followed by a consecutive indeterminate term of 25 years to life on count 4; (2) a determinate term of 10 years, followed by a consecutive term of 25 years to life on count 2; (3) a determinate term of 10 years, followed by a consecutive term of 25 years to life on count 6; (4) a term of six years on count 3; and (5) a term of 16 months (one-third the midterm) on count 8. The sentence on counts 1, 5, and 7 were imposed and stayed pursuant to section 654. The sentences on counts 2, 4, 6, and 8 were imposed consecutively. The sentence on count 3 was imposed concurrently. Mendoza's total sentence was a determinate term of 34 years four months, followed by an indeterminate term of 75 years to life.

### DISCUSSION

As stated in the introduction, appellate counsel filed a brief asserting he did not identify any arguable issues in the case after reviewing the record. We have thoroughly reviewed the record and agree with appellate counsel's conclusion.

---

**3** At the time of trial, Lizarraga worked for the Imperial Police Department.

The evidence supporting the verdict was not only substantial, it was overwhelming. While Chavez recanted her statement to the police, this testimony was highly suspect considering Mendoza was her son and she testified she would do anything for him. Significant parts of Barrientos's testimony were confirmed by Diaz and Nayomy. The evidentiary issues were not complex, the trial court's ruling appropriate, and Mendoza was ably represented during the trial. The jury instructions were straightforward, and nothing inappropriate occurred during closing argument. The trial court acted well within its discretion in sentencing, and fully explained its reasoning for imposing an aggravated sentence where discretion was exercised. On this issue, we note that Mendoza's extensive criminal history and the facts of this crime justified the sentencing choices made by the trial court.

We also note the trial court denied defense counsel's request for a continuance of the sentencing hearing so he could file a motion for a new trial based on newly discovered evidence. However, the trial court's action occurred only after Mendoza's trial counsel and another attorney were relieved from representing Mendoza because of asserted conflicts. Indeed, Mendoza argued a *Marsden*[4] motion shortly before sentencing in an attempt to obtain yet another attorney. The trial court's ruling occurred almost eight months after the jury returned its verdict, and was well within its discretion.

## DISPOSITION

The judgment is affirmed.

---

**4**    *People v. Marsden* (1970) 2 Cal.3d 118.