Filed 10/26/22  P. v. Datson CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D079947 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD286370) |
| GREGORY DATSON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Daniel B. Goldstein, Judge.  Affirmed.

Matthew R. Garcia, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

A jury convicted Gregory Datson of one count of assault with a deadly weapon (Pen. Code,[1] § 245, subd. (a)(1)) and found true the allegation that Datson personally inflicted great bodily injury on the victim (§ 12022.7,

---

[1]     All further statutory references are to the Penal Code.

subd. (a)).  The court found true a serious felony prior conviction (§ 667, subd. (a)) and a strike prior (§ 667, subds. (b)-(i)).

At the sentencing hearing, the court struck the two alleged priors and imposed a four-year upper term for the assault and a consecutive three-year term for the great bodily injury enhancement.

Datson filed a timely notice of appeal.

Appellate counsel has filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) indicating counsel has not been able to identify any arguable issues for reversal on appeal.  Counsel asks the court to review the record for error as mandated by *Wende*.  We offered Datson the opportunity to file his own brief on appeal, but he has not responded.

STATEMENT OF FACTS

Appellate counsel has submitted an accurate summary of the facts of the offense which we will incorporate into this opinion to provide background.

"A.  THE PROSECUTION'S CASE

"Bennett Hazzard and his wife Empiress Williams went to the Encanto liquor store on Imperial Avenue around 9:30 p.m.  Williams went into the store to shop while Hazzard waited outside with their dog.  While waiting outside with his dog, a man approached Hazzard.  The man was taller than Hazzard, and he seemed bothered by something.  He was talking about his phone and some money that had been taken from him.  He moved his hands back and forth and punched the palm of one hand with the other.  He asked Hazzard 'hey motherfucker, where the fuck is my money?  [ . . . ]  Where my phone at?  You took my shit.'  Hazzard told the man 'you got me for somebody else.'  The man did not seem all the way there in his head.  Hazzard called the man a dope fiend, which upset the man.  The man lunged at Hazzard and punched him in the face.  Hazzard took a fighting stance and tried to defend

2

himself.  He backed away from the man's attack, tried to dodge punches, and told him 'chill, chill, chill.'  At some point during the fight, the man cut Hazzard's arm with some sort of sharp object.  The back of Hazzard's arm was split open and he saw muscle hanging out of his skin.  Hazzard saw this and screamed.  The man fled, and Hazzard chased after him, but did not catch him.  Hazzard's arm ached for a while, then went numb.

"Williams heard the argument from inside the liquor store.  She walked outside to find Hazzard bleeding from his arm.  Williams was frantic.  She called 911.  Hazzard then saw police cars approaching with their lights and sirens activated, so he sat down on a curb to wait for them.

"San Diego Police Officers Tyler Smith, Ko Luangamath, and Dumaplin responded to the incident.  Smith contacted Hazzard, who was screaming and frantic.  Luangamath saw a large cut on Hazzard's left arm with exposed flesh.  Luangamath tried to calm Hazzard, and he put pressure on the wound to stop the bleeding while they waited for medics to arrive.  Paramedics arrived a couple minutes later.

"Williams spoke to the police while the paramedics tended to Hazzard.  Williams told Luangamath she heard Hazzard arguing with another black male, the argument became physical, the man then slashed Hazzard's arm with a box cutter, and fled east on Imperial Avenue.  Williams described the man as 38 years old with a short afro hairstyle, wearing a black shirt, black shorts, and a backpack.

"An ambulance transported Hazzard to the hospital.  Luangamath rode with Hazzard and took his statement.  Hazzard received stitches and staples in his arm.  It took two to three months for Mr. Hazzard to fully heal from the wound and regain his strength, and a [seven and one-half] inch scar remained.

"Smith put out a 'be on the lookout' over the radio for a black male wearing all black, armed with a knife. He then followed Hazzard's blood trail to the front of the liquor store. He went inside to check for security cameras, and reviewed the footage. The person who stabbed Hazzard wore a jersey with stars and the number 88 on it. He also wore a backpack with a superman emblem on it. Smith took the store clerk's statement.

"Officers Anthony Huizar and Juan Lopez also responded to the scene and were instructed to search the area for individuals matching the suspect's description. The airborne law enforcement unit spotted an individual possibly matching that description walking along a path through Encanto Park. The helicopter unit radioed the information to officers on the scene. Huizar and Lopez parked their vehicle at the end of the path. When they spotted the individual, they approached him, identified themselves, and detained the person. Officers searched the individual and the surrounding areas but did not find any weapons.

"Officer Smith arrived at the location where the individual was held. He recognized the person being detained as the man from the security footage who attacked Hazzard by the jersey, the almost shaved head, scruffy facial hair, and superman backpack. Smith identified [Datson] in court as the man [who] officers arrested the date of the incident. Luangamath also identified [Datson] in court as the person who officers arrested the date of the incident.

"San Diego Police Officer Billy Andal brought Williams to the location where [Datson] was arrested to conduct a curbside lineup. The car was 15-20 feet away from [Datson] and a light was shined at him. Williams identified [Datson] as the man [who] attacked her husband. SDPD detective David Kean later conducted a photographic lineup with Hazzard. Hazzard was unable to identify the man who stabbed him.

4

"B.  THE DEFENSE EVIDENCE

"[Datson] did not present any evidence.  However, he elicited the following testimony from the Hazzard and Empiress during trial:

"Hazzard was 100 [percent] certain that [Datson] was not the man who attacked him.  Hazzard saw the man who attacked him at a later date near the Encanto park.  Hazzard and Williams were walking near Encanto Park and Hazzard saw a group of friends.  As he stopped to speak to his friends, he noticed a man staring at him.  As Hazzard told his friend about what happened to his arm, the man who was staring at Hazzard said, 'what's up?'  'What are you going to do about it?'  Hazzard saw the man's face and the similar aggression, suddenly Hazzard realized that this person was the same man [who] attacked him outside of the liquor store.  Hazzard was 100 [percent] sure that the man from the park was the man who attacked him.  Hazzard contacted the District Attorney and the Public Defender's office a few days later to tell them that they did not have the right man in custody.  Hazzard had never seen [Datson] prior to trial.

"Empiress was with Hazzard in the park and saw the man who was aggressive toward Hazzard.  He looked the same as the man who previously attacked Hazzard but had a different hairstyle.  Empiress did not recognize [Datson] in court, and did not see him the night of the incident.  She only identified [Datson] as the man who attacked her husband at the curbside lineup because he was the only person in police custody, so she assumed he was the attacker.

"[Datson] had a shaved head and no physical injuries on his face, and no injuries or blood on his hand when officers arrested him.  There was no blood on [Datson]'s clothing when officers arrested him."

5

DISCUSSION

As we have noted, appellate counsel has filed a *Wende* brief and asks the court to review the record for error. To assist the court in its review, and in compliance with *Anders v. California* (1967) 386 U.S. 738 (*Anders*), counsel has identified possible issues that were considered in evaluating the potential merits of this appeal:

1. Whether the trial court erred in denying Datson's motion to replace counsel under *People v. Marsden* (1970) 2 Cal.3d 118.

2. Whether the trial court erred in denying Datson's motion for mental health diversion under section 1001.36.

3. Whether the trial court erred in imposing an upper term sentence under section 1170, subdivision (b).

We have reviewed the entire record as required by *Wende* and *Anders*. We have not discovered any arguable issues for reversal on appeal. Competent counsel has represented Datson on this appeal.

## DISPOSITION

The judgment is affirmed.

HUFFMAN, Acting P. J.

WE CONCUR:

O'ROURKE, J.

IRION, J.