Filed 8/3/23  P. v. Moon CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>JOSHUA DANIEL MOON,<br><br>　　　Defendant and Appellant. | F085294<br><br>(Kings Super. Ct.<br>No. 13CM2377HTA)<br><br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Kings County.  Robert Shane Burns, Judge.

Carlo Andreani, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

[*] Before Hill, P. J., Poochigian, J. and Detjen, J.

## **INTRODUCTION**

In 2014, appellant and defendant Joshua Daniel Moon (defendant) was convicted after a jury trial of seven counts of committing sexual and assaultive offenses against his two minor children and sentenced to a determinate term of seven years plus an indeterminate term of 15 years to life in prison. In his direct appeal, this court reduced one felony conviction to a misdemeanor, ordered an allegation stricken, and remanded for resentencing. On remand, the trial court modified the sentence, and his aggregate term remained the same. On appeal from the remand, we affirmed the court's resentencing order.

In 2022, defendant filed a petition in the trial court for resentencing pursuant to Penal Code[1] section 1170.91, subdivision (b), which permits individuals to petition for resentencing when certain military-related trauma was not considered as a mitigating factor at the time of sentencing. The trial court appointed counsel, reviewed defendant's records, conducted a hearing, and denied the petition, finding defendant was not eligible for resentencing on the indeterminate sentences imposed for his convictions based on the statutory provisions, and he was not eligible or suitable for resentencing on the determinate terms imposed for the other offenses.

In this appeal from the court's denial of defendant's section 1170.91 petition, his appellate counsel filed a brief which summarized the facts with citations to the record, raised no issues, and asked this court to independently review the record. (*People v. Wende* (1979) 25 Cal.3d 436.) Defendant filed a letter brief raising certain issues. We affirm.

---

[1] All further statutory citations are to the Penal Code unless otherwise indicated.

# FACTS[2]

Defendant and K. were married in 2001 and were the parents of two children. At the time of defendant's jury trial in 2014, M. was eight years old and her brother, J., was 12 years old.

Defendant was in the military for most of the marriage. From June 2004 through April 2011, the family lived on the Naval Air Base (the Base) in Lemoore. From December 2004 through October 2008, they lived in a house with a red roof on Simmons Court. Between October 2008 and April 2009, K. and the children lived in Nevada, as she and defendant were having marital problems. In April 2009, K. and the children returned to defendant. From then until April 2011, the family lived on the Base in a house with a gray roof on Banshee Court.

K. and defendant separated in May 2012, after which K. and the children moved to Nevada. In her complaint for divorce filed October 3, 2012, K. requested sole physical custody of the children, with defendant to have supervised visitation. Under the terms of the final decree, which was filed February 27, 2013, K. and defendant received joint legal custody, while K. had primary physical custody. Defendant received supervised visitation. His visitation had to be set up at the house of one of his family members and to be arranged around K.'s work schedule and the children's schedules. Visitation took place once or twice a month.

On March 6, 2013, J. told K. that defendant had abused J. and M. K. asked why J. waited so long to tell her about the abuse. J. said he was afraid of defendant. When K. observed defendant had been out of the house for several months, J. explained that with

---

[2] After notice to the parties, we have taken judicial notice of this court's own records and nonpublished opinions in defendant's direct appeal, *People v. Moon* (Jan. 9, 2017, F069168 (*Moon I*)) and his appeal from the resentencing hearing, *People v. Moon* (May 23, 2018, F076134 (*Moon II*)). The following facts and procedural history of defendant's convictions are from these records. (Evid. Code, § 450, § 452, subd. (d), § 59.)

K. and defendant fighting so much and leaving and going back, J. was unsure if K. would go back to defendant again, so he needed to wait to be sure.

K. did not immediately report the abuse to authorities, because she wanted to wait for M. — who had confided in J. only a few days earlier — to come to her. On April 6, 2013, J. apparently persuaded M. to talk to K. M. said defendant urinated in her mouth and then made her suck on his penis. M. said it happened once in Lemoore and once in Nevada.

The next day, April 7, 2013, K. went to the Lyon County Sheriff's Department and made a report. Detective White subsequently interviewed both children.

**Charged Acts Against M. (Counts 1–2 & 4–6)**

On one occasion when the family lived in California in the house with the gray roof, M. was lying on her bed when defendant came into her room. He told her to get on the floor. He pulled down his pants and knelt over her, then he made her suck his penis. He told her it was just a dream, but she knew it was real. Defendant whispered to her not to tell anybody. M. said she had to go to the bathroom, but he would not let her. When she said she really needed to go, he told her to urinate in his mouth. She did, although she did not want to. Defendant then left the room, while M. got back in bed and went to sleep.

Defendant told M. not to tell anybody about the things he did. He said that if she told anyone, he would do it again. He told her this in Nevada and in California, after he put his penis in her mouth. In California, he specifically said she should not tell her mother or brother.

Detective White conducted a forensic interview with M. on April 16, 2013. M. disclosed that defendant had awakened her during the night and told her to lie back. He urinated in her mouth and then had her "suck it." M. said this happened in California.

Kings County Sheriff's Detective Speer interviewed M. on June 11, 2013. M. described an incident in California in which she sucked defendant's penis, and he

4.

urinated in her mouth.  She described the urine's color, odor, and taste ("eww"), and said she spit it in the toilet.  M. said she was four or five when this happened.  Speer found no indication M. had been coached.

**Charged Acts Against J.  (Counts 7 & 8)**

During the time the family lived on Simmons Street, J. and defendant were sitting on the couch in the living room, watching television, when defendant told J. to lie down. Defendant lay on J. with his stomach on J.'s face.  J. managed to kick him off, but defendant put a plastic bag over J.'s head and lay on him again.  J. was unable to breathe. J. started kicking, and defendant got up.  J. removed the plastic bag and ran into the garage, where he waited until K. and M. came home.  J. did not tell his mother, because he was afraid defendant would hurt him again.  A couple days after the incident, defendant said if J. told anybody, defendant would hurt J.

There was a swimming pool on the Base.  Defendant told J. to jump off the diving board.  J. did not want to, as he was not a good swimmer.  Defendant kept telling J. to dive off the diving board, and eventually J. crouched down, crying.  When the lifeguard asked J. if he knew how to swim and J. said no, defendant got very angry and said they were going home.  Once they got home, defendant started yelling at J. and punching him with his fists.  Defendant gave J. a black eye and pounded on his chest, causing painful bruises.  Defendant said J. had embarrassed him in public.  He told J. to tell people J. hit a pole or something.  When J.'s friends and teachers asked, J. said he fell on a pole.

**Uncharged Acts**

During the marriage, defendant watched adult pornography that sometimes showed males urinating in females' mouths or multiple females urinating on a single male.  Defendant asked K. to watch these images.  Sometimes, it led to sexual intercourse between defendant and K.  Defendant also asked K. to view pornography depicting women sitting on men's faces.  Again, this sometimes led to defendant and K. having sexual intercourse.  Sometimes when they were in the shower, K. would accede to

5.

defendant's request that she urinate in his mouth. Defendant also liked to urinate on K., but she did not like him to urinate in her mouth and tried to avoid it as much as she could. The urination happened a few times a week. It caused conflicts in the marriage, because defendant would get very angry with K. when she would not do it. She did not like doing it, although it did sometimes lead to sexual intercourse. Around 2005, defendant began restricting K.'s breathing once or twice a month as part of sexual intercourse. First, he put pillows over her face, then blankets. He then started using plastic grocery bags. When K. told him she was scared about not being able to breathe, defendant said he would never let anything happen to her.

One day, when the family lived on the Base and M. believed she was in kindergarten, she and defendant were home alone. M. was lying on her bed when defendant sat on her stomach, making it hard for her to breathe. M. felt scared, and her lower body hurt for a couple hours. Defendant told her not to tell anyone. Eventually, however, M. told one of her teachers. A lady came to the house and asked M. questions about what defendant did. M. did not tell what he had done, because, when the lady parked in front of the house, defendant told M. not to tell her.

Once, when the family lived in Nevada and M. was six years old, defendant sat on the couch while M. was on her knees on the floor. Defendant pulled down his pants and scooted close to her. She asked if she could play on the computer, but he said she had to suck his penis first. She did not want to, but he put his hands on the back of her head and pushed her head to his "private spot" and made her orally copulate him. After defendant put his penis in M.'s mouth, he urinated in her mouth. M. spit the urine out in the bathroom sink.

On another occasion in Nevada, defendant told M. to take off her pants and lie on defendant's bed. Defendant then took off his pants and lay on M. His stomach, penis, and legs were touching her body, with his penis touching her "no-no square" on the outside. Defendant was moving his body and it felt "weird and scary." The tip of his

6.

penis went inside her "no-no square," but nothing came out of his penis.  Defendant's face looked "frustrated and tired."[3]

**Defense Evidence**

Manuela Wyatt, a representative of Kings County Child Protective Services, testified she went to defendant's home in February 2010 in response to abuse allegations, and her purpose was to assess the situation and determine whether the allegations were true or unfounded.  Wyatt was unable to determine if M. had been sexually abused.

Prior to the visit, Wyatt did not notify the family she was coming.  She did not recall if she parked in front of the residence.  K. answered the door in response to Wyatt's knock.  Defendant approached behind her.  He had a blanket around him.  The door was closed, as he said he needed to change.  Defendant and K. went back inside the residence, while Wyatt and other agents remained outside.  After about five minutes, defendant and K. returned to the door.  Wyatt did not see defendant speak to M., although she was unable to see through the windows.

## PROCEDURAL BACKGROUND

**Jury Trial and Convictions**

In February 2014, after a jury trial, defendant was convicted of committing the following offenses against M. between June 1, 2008, and April 30, 2011, as alleged in the first amended information:  count 1, oral copulation with a child 10 years of age or younger (§ 288.7, subd. (b)); count 2, aggravated sexual assault of a child under age 14 by a person more than seven years older than the victim (§ 269, subd. (a)(4)); counts 4 and 6, lewd and lascivious acts on a child under age 14 by use of force, violence, duress,

---

[3] There was also evidence defendant sat on M.'s stomach and restricted her breathing, lay on top of her while his penis possibly slightly penetrated her vagina, and pushed her head to his penis.  Although these acts were not charged, jurors were told they could consider uncharged oral copulation and lewd and lascivious acts with a minor as evidence defendant was disposed to commit sexual offenses, and so was likely to have committed the charged offenses.

menace, and/or threat of great bodily harm (§ 288, subd. (b)(1)); and count 5, child abuse under circumstances likely to produce great bodily harm or death, to wit, urinating in M.'s mouth (§ 273a, subd. (a)).[4]

As to counts 4 and 6, the jury further found defendant committed the offenses by the use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury (§ 1203.066, subd. (a)(1)), and that defendant had substantial sexual conduct with M. (*id*., subd. (a)(8)).

Appellant was also convicted of committing the following offenses against J. between March 6, 2007, and April 9, 2013, as alleged in the first amended information: count 7, misdemeanor child abuse (§ 273a, subd. (b)); and count 8, assault with a deadly weapon, to wit, a plastic bag (§ 245, subd. (a)(1)).  As to counts 7 and 8, the jury found the statute of limitations was extended pursuant to section 803, subdivision (d), because J. and defendant were absent from the state.

**The Probation Report[5]**

The probation report prepared in 2014 for defendant's sentencing hearing stated that he served in the United States Navy and was honorably discharged on June 1, 2011.

The probation report further stated that defendant (born 1983) reported he was diagnosed with dissociative disorder in 2007 and was taking antidepressants.  Defendant reported he was diagnosed with posttraumatic stress disorder (PTSD) in 2007, and he was not under the care of any physician or taking medication for that condition.

---

[4] In count 3, defendant was charged with forcible oral copulation against M., in violation of section 288a, former subdivision (c)(2).  The jury did not return a verdict on this count because it was instructed the offense was charged in the alternative with count 2.

[5] We are summarizing the 2014 probation report prepared for defendant's sentencing hearing because, as will be explained below, the trial court expressly cited findings in that report when it addressed defendant's section 1170.91 petition.

Defendant stated was employed as a gas station cashier in 2011 through 2012 and left the job "due to his disability interfering with work." He received VA benefits until he was incarcerated.

Defendant reported that by the time he was 22 years old, he was a heavy consumer of liquor and beer. He drank approximately a 30-pack of beer per week and one bottle of liquor per week until 2012. He also used marijuana on a weekly basis until 2013.

Defendant gave a statement to the probation officer where he maintained his innocence, claimed his former wife was responsible for the charges as retaliation to an unfavorable divorce outcome, and insisted he never harmed his children.

**The Sentencing Hearing**

On March 27, 2014, Judge Robert Burns, who presided over defendant's jury trial, conducted the sentencing hearing.

The court stated that defendant was not eligible for probation, but it would not grant probation even if he was eligible based upon the facts of the case because the crimes involved a high degree of cruelty and callousness.

As to the imposition of sentence, the court found defendant's conduct of "urinating in a child's mouth for sexual gratification … occurring from the degradation of another human being seems to be particularly callous. And suffocating a child with a plastic bag to obtain sexual gratification from the fear you inflicted on the child seems … to be particularly callous, as well as cruel towards that individual." The court found defendant engaged in violent conduct and took advantage of his position of trust to commit the sexual and physical assaults against his children. The court intended to impose an aggregate term of seven years plus 15 years to life and would impose consecutive terms on certain counts because the crimes and objectives involved separate victims and acts of violence, that were committed on different occasions with independent criminal objectives, and defendant had a reasonable time to reflect on his conduct but continued to commit the offenses.

Defense counsel asked the court to impose lower and/or concurrent determinate sentences for some of the convictions because defendant had no prior record, he was a veteran with an honorable discharge, and "[t]hat certainly does not make up for the acts, but he is also doing life in prison."

The prosecutor replied defendant committed some of the most vile acts that could be done against his children over a significant period of time.

The court sentenced defendant to an aggregate term of seven years plus 15 years to life as follows: the midterm of six years for count 6, plus a consecutive term of one year (one-third the midterm) for count 8; followed by a consecutive term of 15 years to life for count 1.

The court imposed and stayed determinate terms for counts 4 and 5, and a concurrent term for misdemeanor count 7. The court also imposed 15 years to life for count 2 and stayed that term pursuant to section 654.

After imposing sentence, the court advised defendant that he was ordered to register as a sex offender pursuant to section 290 upon his release from custody.

**Direct Appeal**

On January 9, 2017, this court filed the nonpublished opinion in *Moon I*, *supra*, F069168, defendant's direct appeal, and held the evidence failed to establish the act that formed the basis for count 5 was committed under circumstances likely to produce great bodily harm or death. We further held there was substantial evidence of duress presented to affirm the convictions on counts 2, 4, and 6, and the trial court was not required to stay the sentence on count 6. However, we concluded the substantial sexual conduct finding as to count 6 must be stricken.

We modified count 5 from felony to misdemeanor child abuse in violation of section 273a, subdivision (b); order the true finding on the section 1203.066, subdivision (a)(8) allegation stricken as to count 6; and remanded for resentencing.

10.

**Remand for Resentencing**

On June 29, 2017, Judge Burns conducted the resentencing hearing on remand. The court imposed one year in jail for misdemeanor count 5 and stayed that term pursuant to section 654. The court also ordered the substantial sexual conduct finding on count 6 stricken. Defendant's sentence remained seven years plus 15 years to life.

**Appeal After Resentencing**

On May 23, 2018, this court filed the nonpublished opinion that affirmed the trial court's order after resentencing. (*Moon II*, *supra*, F076134.)

We first rejected defendant's attempts to raise issues regarding his jury trial and the sentences imposed on the other counts. As to the court's orders at the resentencing hearing, defendant argued "he suffered from dissociative disorder, post-traumatic stress disorder, and sleep apnea, as diagnosed by the United States Navy. He asserts that the judge, prosecutor, and his defense attorneys all knew he suffered from these disabilities, but 'nothing was done by any of them." We held that to the extent defendant raised a claim of ineffective assistance "in failing to alert the resentencing court to defendant's disabilities and pursue accommodations for defendant, defendant still must show that he was harmed by counsel's failure – that is, he must show a reasonable probability that the resentencing would have been more favorable to him had counsel not failed in this regard. Defendant makes no such showing. He does not explain what accommodations he needed or wanted and how those accommodations would have changed the outcome of the resentencing. Under these circumstances, we have nothing upon which to conclude defense counsel was ineffective." (*Moon II*, *supra*, F076134.)

## DEFENDANT'S SECTION 1170.91 PETITION

On March 11, 2022, defendant filed, in pro. per., a petition in the trial court for resentencing pursuant to 1170.91, and for the court to determine whether he satisfied the statutory criteria of "being a member of the United States military who may be suffering from post traumatic brain injury, sexual trauma, substance abuse, or mental health

11.

problems as a result of his military service, to consider that circumstances as a factor in mitigation when imposing a term pursuant to … Section 1170.91." Defendant submitted medical and military records in support of his petition.

**The Court's Initial Order**

On May 26, 2022, Judge Burns, who presided over defendant's trial and sentencing hearing, held the first hearing on defendant's petition. The court stated defendant had "proffered documentation of his military service and associated disability," and "it would presume, for purposes of this analysis, that defendant is a person described by Section 1170.91(a)."

The court denied the petition as to the indeterminate sentences imposed for counts 1 and 2, and the misdemeanor sentence for count 5, because section 1170.91 excluded such terms from its resentencing provisions.

The court held that under section 1170.91, defendant was potentially eligible for resentencing as to the determinate terms imposed for counts 4, 6, and 8. The court appointed counsel for defendant and set the matter for a further hearing.

**Further Proceedings**

On August 5, 2022, the court held another hearing on the petition, and stated defendant sought resentencing because the court "did not consider trauma associated with his military service as a mitigating factor at the original sentencing in 2014."

The court further stated that a fully updated sentencing report was not required unless requested by one of the parties, and the original probation report appeared to be sufficient. The court directed the probation department to review the supplemental mitigating factors raised by defendant, and for a letter of judicial notice addressing those factors. The parties agreed on both matters.

**The Probation Department's Evaluation**

On August 25, 2022, the probation department filed a "Letter of Judicial Notice" with the trial court, that reviewed and summarized defendant's military service and

medical records, to address "any mitigating factors" related to PTSD "as a result of military service."

The report concluded that based upon the review of defendant's military and medical records, his "Chronic PTSD was not caused by his military service, given the defendant was honorably discharged from service for mental health conditions *deemed not combat related*. Furthermore, the medical records do not provide thorough information to suggest otherwise. Therefore, it does not appear the defendant's Chronic PTSD qualifies as a mitigating factor." (Italics added.)

On September 2, 2022, the court provides the parties with the probation department's letter of judicial notice and report and set a hearing on the merits of defendant's petition.

**The Court's Hearing on the Petition**

On September 15, 2022, the court convened the hearing and stated it had reviewed defendant's petition, and the attached medical and military reports.

The prosecutor argued the petition should be denied because defendant's medical and military records did not establish his "anxiety and memory loss were caused by his military service," and "the mental health issues don't appear to be directly related to the crimes that were committed." The records shows that defendant joined the Navy in 2003. Defendant and his wife were married in 2001, defendant began engaging in acts against his wife at that time, and these acts escalated to the offenses committed on his children over a long period of time. "Nothing indicates that there was some sort of mental health break that occurred and then resulted in the crimes. They were escalating from the marriage beginning in 2001 through 2011, even before the military service began in 2003. And so the People believe that that shows that the mental health issues that presented in the records did not relate to the crimes or caused the crime as it appears that they began even before the mental health records began in 2003." Defense counsel submitted the matter.

13.

***Denial of the Petition***

The court stated it was denying defendant's petition for resentencing as to the determinate sentences imposed for his convictions because he was "neither eligible nor suitable" under section 1170.91.

> "[I]t appears from the records that the [D]epartment of the Navy discharged [defendant] for a service connected condition … of other specified trauma and stress disorder, and unspecified dissociative disorder, which previously had been characterized as an anxiety disorder not otherwise specified. It indicated that he was 50 percent disabled, and that determination was based upon his forgetting names, having a difficulty in adapting to stressful circumstances, difficulty in adapting to work, depressed mood, difficulty in adapting to a work-like setting… *There is nothing in the documentation from the military provided to the Court that indicates that any of that was as to the statute says was a result of his military service*. In fact, the only factual description the Court could find in the records was from a report from [November 2007] that indicates that [defendant] was suffering memory loss and depression, and that he had indicated that he had a long history of abuse. Stating that in his childhood his father was incarcerated for attempted murder and robbery, and shortly thereafter was sent to a forensic psychiatric unit and that his mother had numerous boyfriends who were physically abusive to her and [defendant]. And that he at the age of … 15 years old indicated he attempted suicide by taking an overdose of Ritalin, and then indicated at the age of 16 he was raped by a female cousin resulting in her pregnancy for which he now pays child support.
>
> "*All of that occurred before the age of 16 … which would be long before his military service*. And if you read the statute itself the statute says the Court has to consider the mitigating factor when the mental health problem that is being addressed [in] section 1170.91 [was] as a result of his or her military service. *There is nothing presented in the records that suggests his mental health issues were a result of his military service ….*" (Italics added.)

The court further held that even if defendant was eligible, it was not suitable for the court to exercise its discretion to resentencing him:

> "[T]here is nothing in the reports provided that suggest how that mental health issue would be related to his conduct in any form or manner in the crimes that were committed in this case. There is nothing about forgetting names or having a difficulty adapting to stress or difficulty adapting to [his]

14.

work schedule, *those sort of things that have any relationship to sexually assaulting children or a spouse, or physically abusing children or a spouse. And there is nothing related in the reports provided to the Court that would suggest some sort of causal connection that would diminish [defendant's] culpability for the crimes that he committed based upon those factors.*" (Italics added.)

On November 9, 2022, defendant filed a timely notice of appeal from the court's order that denied his section 1170.91 petition for resentencing.

**DISCUSSION**

As noted above, defendant's counsel filed a *Wende* brief with this court on April 14, 2023. The brief also includes the declaration of appellate counsel indicating that defendant was advised he could file his own brief with this court. By letter on the same day, we invited defendant to submit additional briefing. As will be discussed below, defendant submitted a letter briefing raising issues regarding the denial of his section 1170.91 petition, and has also attempted to raise issues regarding his trial and original sentencing.

## I.     Section 1170.91

We begin with the provisions of section 1170.91, which was enacted in 2014 and became effective on January 1, 2015. (*People v. King* (2020) 52 Cal.App.5th 783, 788; *People v. Sherman* (2023) 91 Cal.App.5th 325, petn. for review pending, petn. filed June 15, 2023 (*Sherman*).) "The original statute merely required courts to consider as a mitigating factor for determinate sentencing certain specified qualifying conditions the defendant may be suffering as a result of his or her military service – sexual trauma, traumatic brain injury, posttraumatic stress disorder, substance abuse, or mental health problems. [Citations.] As amended, this sentencing provision is now contained in section 1170.91, subdivision (a)." (*Sherman, supra*, at p. 329.)

"In 2018, the Legislature added subdivision (b) to section 1170.91. Subdivision (b) authorizes retrospective relief for previously sentenced criminal defendants who may suffer from one of the qualifying conditions as a result of their

15.

military service. As originally enacted, subdivision (b) allowed a defendant who was sentenced before January 1, 2015 to petition the court for a recall of the sentence and request resentencing 'pursuant to subdivision (a)' if his or her qualifying condition 'was not considered as a factor in mitigation at the time of sentencing' [Citation.] Like subdivision (a), subdivision (b) originally applied only to defendants who were eligible for determinate sentences." (*Sherman, supra*, 91 Cal.App.5th at p. 329.)

"In 2022, the Legislature amended the statute again," effective on January 1, 2023. (*Sherman, supra*, 91 Cal.App.5th at p. 330.) The amendment "both expanded and restricted eligibility for relief. In relevant part, it expanded subdivisions (a) and (b) to include those serving indeterminate sentences; it eliminated the requirement that the defendant must have been sentenced before January 1, 2015, to be eligible for resentencing; and it added a provision explicitly stating that subdivision (b) 'shall apply retroactively' [citation]. At the same time, however, it restricted eligibility by adding subdivision (c), a carve-out provision stating that '[t]his section does not apply to a person convicted of, or having one or more prior convictions for, an offense specified in clause (iv) of paragraph (C) of paragraph (2) of subdivision (e) of Section 667 *or an offense requiring registration pursuant to subdivision (c) of Section 290*.' " (*Ibid.*, italics added.)

The 2023 amendment thus expressly excludes a person having a conviction requiring a sex offender registration from relief under section 1170.91, and makes the exclusion retroactive. This exclusionary language has been interpreted to be retroactive to cases pending on appeal. (*Sherman, supra*, 91 Cal.App.5th at pp. 330–331.)

As amended, there is a three-step process for a prisoner who seeks resentencing under section 1170.91. First, the prisoner files a petition for resentencing to allege he or she "may be suffering" from military service-related trauma. (§ 1170.91, subd. (b)(1).) Second, the trial court must hold a hearing to determine whether the petitioner "satisfies the criteria," meaning the person suffers trauma "as a result of the person's military

service" and the other statutory provisions. (*Id*. at subds. (b)(1), (b)(3), (c).) Third, "[i]f the person satisfies the criteria, the court may, in the interest of justice," resentence the petitioner. (*Id.* at subd. (b)(3).)

## II.     The Trial Court's Denial of Defendant's Petition

When defendant filed his petition in pro. per., the trial court complied with section 1170.91 in addressing his allegations. The matter was assigned to Judge Burns, who presided over defendant's jury trial in 2014. (§ 1170.91, subd. (b)(2).) The court appointed counsel for defendant, provided time for briefing from the parties and a report on defendant's medical and military records, and conducted hearings as to whether defendant met the statutory criteria. (*Id*. at subd. (b)(3).)

In his letter brief, defendant asserts he was eligible for resentencing under section 1170.91 because his records show his conditions of PTSD, Dissociative Disorder (NOS) and "Moderate Sleep Apnea," and his commission of the offenses in this case, were "service connected." Defendant further argues the trial court could not rely on the nature of his convictions to deny his petition, he presumed his prison records were already available to the court, and the court failed to consider his positive performance in prison.

Based on the statutory provisions that were applicable at the time of the hearings in 2022, the trial court correctly found that defendant was ineligible for resentencing on the indeterminate sentences imposed for counts 1 and 2, and that he made a prima facie case for resentencing on the counts for which he received determinate terms. (See *People v. Estrada* (2020) 58 Cal.App.5th 839, 842–843.) Thereafter, the court conducted an evidentiary hearing where it reviewed defendant's medical and military records, and concluded he was neither eligible nor suitable for resentencing on the determinate sentences imposed for his convictions under section 1170.91.

We find the trial court did not abuse its discretion in denying defendant's petition. The court acknowledged the information in defendant's records, but also found

17.

defendant's mental health complaints began long before he joined the military. The court further stated that even if it found defendant was eligible for resentencing, the nature of defendant's repetitive and callous crimes committed against his children, over a long period of time, overwhelmed any mitigating factors so that he was not suitable for resentencing. The court noted that defendant's callous behavior began shortly after he married K., which was before he joined the military, and he continued to engage in this behavior up to the time of his arrest in this case.

> "[T]here is nothing in the reports provided that suggest how that mental health issue would be related to his conduct in any form or manner in the crimes that were committed in this case. There is nothing about forgetting names or having a difficulty adapting to stress or difficulty adapting to [his] work schedule, *those sort of things that have any relationship to sexually assaulting children or a spouse, or physically abusing children or a spouse. And there is nothing related in the reports provided to the Court that would suggest some sort of causal connection that would diminish [defendant's] culpability for the crimes that he committed based upon those factors.*" (Italics added.)

The court did not abuse its discretion when it found defendant was not suitable for resentencing on the determinate terms based upon the version of section 1170.91 that existed at the time of the hearing on his petition.

III.    **Application of the Amended Statute**

In his letter brief, defendant asserts that since the trial court conducted the hearing on his petition in 2022, prior to the effective date of the amendment to section 1170.91 that became effective on January 1, 2023, it improperly applied the "categorical disqualification for eligibility" of certain offenses to his petition.

As explained above, the trial court applied the version of section 1170.91 that existed at the time of the hearings on defendant's petition in 2022. It did not find that defendant was categorically ineligible for resentencing because he was ordered to register as a sex offender. Instead, the court found that defendant was ineligible for resentencing on counts 1 and 2 because he was sentenced to indeterminate terms on those convictions,

18.

consistent with the then-applicable version of section 1170.91. (See *People v. Estrada, supra*, 58 Cal.App.5th at pp. 842–843.) It then declined to exercise its discretion as to the determinate terms, finding he was neither eligible nor suitable for resentencing.

Also as explained above, however, the amendment to section 1170.91, effective January 1, 2023, eliminated the exclusion for indeterminate sentences and, at the same time, "restricted eligibility" by adding "a carve-out provision stating that '[t]his section does not apply to a person convicted of … an offense requiring registration pursuant to subdivision (c) of Section 290.' (§ 1170.91, subd. (c).)" (*Sherman, supra*, 91 Cal.App.5th at p. 330.) This provision has been held retroactive to cases such as the instant one, that was pending on appeal at the time the amendment became effective. (*Ibid*.)

Defendant was convicted of seven offenses, including count 1, oral copulation with a child 10 years of age or younger (§ 288.7, subd. (b)); count 2, aggravated sexual assault of a child under age 14 by a person more than seven years older than the victim (§ 269, subd. (a)(4)); and counts 4 and 6, lewd and lascivious acts on a child under age 14 by use of force, violence, duress, menace, and/or threat of great bodily harm (§ 288, subd. (b)(1)).)

Section 290, subdivision (c)(1), states that every person convicted of certain offenses, including violations of section 288.7, section 269, and section 288, "shall" register as a sex offender. At defendant's sentencing hearing, the court stated he was ordered to register as a sex offender pursuant to section 290 upon his release from custody. As a result, defendant is categorically ineligible for resentencing.

As a separate matter, the current version of section 1170.91, subdivision (c) states that a defendant is also categorically ineligible for resentencing if "*convicted of*, or having one or more prior convictions for, an offense specified in clause (iv) of paragraph (C) of paragraph (2) of subdivision (e) of Section 667…." (§ 1170.91, subd. (c), italics added.) This phrase refers to "super-strike offenses" defined in section 667, subdivision

19.

(e)(2)(C)(iv).  (*Sherman, supra*, 91 Cal.App.5th at p. 328.)  An offense included in that list is "[a] lewd or lascivious act involving a child under 14 years of age, in violation of Section 288."  (§ 667, subd. (e)(2)(C)(iv)(III).)  Defendant was convicted in counts 4 and 6 of violating section 288, subdivision (b)(1), committing lewd and lascivious acts on a child under age 14 by use of force, violence, duress, menace, and/or threat of great bodily harm.  There is thus a second reason why defendant is categorically ineligible for resentencing.

Defendant argues his case is similar to the facts addressed in *People v. Coleman* (2021) 65 Cal.App.5th 817, where the matter was remanded for the trial court to reconsider a section 1170.91 petition for resentencing.  However, *Coleman* addressed the version of section 1170.91 that was applicable in 2019 and 2021.  As we have explained, however, defendant is now categorically ineligible for resentencing as a result of the amendment to section 1170.91, subdivision (c), which is retroactive to cases pending on appeal.

## IV.    Defendant's Additional Issues

Finally, defendant's letter brief raises numerous issues regarding his jury trial and sentencing hearing in 2014.

Defendant claims his trial attorney was prejudicially ineffective because prior to his jury trial, defendant allegedly informed counsel his alleged mental disabilities, his "memory loss" meant that he could not remember if he actually committed the charged offenses, counsel never investigated these issues or tried to negotiate a plea agreement, and defendant made several pretrial motions pursuant to *People v. Marsden* (1970) 2 Cal.3d 118 because of these alleged conflicts.

Defendant asserts the transcripts of his pretrial *Marsden* hearings show that his trial counsel failed to communicate information about his alleged memory disorder during plea negotiations to explain why defendant was unable to plead "guilty," and that he would have been willing to plead "no contest," but counsel failed to accommodate his

20.

limitations. Defendant further argues he wanted his counsel to raise these issues before the jury. Defendant asserts the court should have been aware of the discussions at his pretrial *Marsden* hearings and considered these matters when he ruled on his section 1170.91 petition. Defendant concludes that as a result of these errors, this court must vacate the entirety of the judgment against him and allow him to renegotiate an agreement for a "no contest" plea to the charges filed against him.

In addition, defendant asserts certain witnesses who testified at his jury trial were not credible because they were impeached, and the trial court improperly relied on such evidence when it denied his petition for resentencing.

Defendant challenges the court's original sentencing decisions in 2014 and asserts certain terms either should have been imposed concurrently or stayed pursuant to section 654, because he lacked any capacity for reflection when he committed the charged offenses. Defendant further argues the court's original sentencing decisions were improper because it relied on the probation report's conclusion that he did not show remorse for his crimes, but defendant was unable to show remorse because he lacked "knowledge" as to whether he actually committed the crimes because of his memory problems.

We decline to address these complaints because defendant's contentions about the court's pretrial rulings, his jury trial, the credibility of witnesses, and the court's sentencing decisions in 2014 are not cognizable in the instant appeal since the validity of defendant's long-final judgment was not before the trial court. (See, e.g., *People v. Stewart* (2021) 66 Cal.App.5th 416, 424, 427; § 1170.91, subd. (b)(8) ["This subdivision does not diminish or abrogate the finality of judgments in any case not falling within the purview of this subdivision"].) In addition, any claims of ineffective assistance allegedly based on counsel's conduct during pretrial proceedings, defendant's jury trial, and his sentencing hearing are more appropriately made in a habeas corpus proceeding. (*People v. Wilson* (1992) 3 Cal.4th 926, 926.)

21.

After independent review of the record, we find that no reasonably arguable factual or legal issues exist.[6]

## DISPOSITION

The court's order of September 15, 2022, denying defendant's section 1170.91 petition, is affirmed.

---

[6] In his letter brief, defendant seeks to "preserve any and all issues under appeal for review in federal court" based on his alleged disabilities. We note defendant's statement.