Filed 8/8/13  P. v. McNamara CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Tehama)

----

| | |
|---|---|
| THE PEOPLE, | C072196 |
| Plaintiff and Respondent, | (Super. Ct. No. NRC82003) |
| v. | |
| EDWARD EUGENE MCNAMARA, | |
| Defendant and Appellant. | |

This is an appeal pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).

On May 25, 2011, the victim rented a motel room and shared it with Torijean Bess and Bess's young son, who the victim had recently met.  At the motel, the victim and Bess met another couple, Ashley Turner and Heath Chaffin, who, along with their child, occupied the room two doors down.  After the victim and Bess drank with Turner and Chaffin most of the afternoon, the victim decided to pay for $100 worth of methamphetamine and Turner knew where to buy it.  Turner and Bess left to buy the drugs.  During the drive, Bess told Turner the victim just borrowed a lot of money ($2,000) from his grandfather and bought a prepaid credit card.  Bess wanted some of the money.  They stopped so Turner could visit with William Bishop in order to buy the

1

drugs but Bishop did not have any. Turner, Bess, and Bishop went to another location and, during the drive, they talked about the victim's money and how easy it would be to get his money. They stopped and Bishop went into a friend's house. Bishop returned with defendant Edward Eugene McNamara. Turner, Bess, Bishop, and defendant went back to the motel room. During the drive, they talked about the victim's money and Bess bragged about how much the victim had. In the victim's motel room, Turner, Bess, Bishop, defendant, Chaffin, and the victim used methamphetamine and drank. The next morning, defendant displayed a knife which previously belonged to Bess and demanded the victim's money ($1,200 to $1,400), his prepaid credit card worth $500, and his personal identification number to use the card. Fearing for his life, the victim turned over all the items demanded. Defendant then ordered the victim to leave the motel room and threatened him if he called the police. The victim left the room, walked to a gas station, and called the police. When the police arrived at the motel, defendant drove off with Bess, leading the police on a high speed chase. Defendant got out of the car and fled on foot.

At trial, the victim testified as did Bess and Turner. Bess and Turner both testified against defendant under an agreement with the prosecutor concerning the charges pending against them. Prior to trial, defendant threatened Bess to change her story.

A jury convicted defendant of first degree robbery (Pen. Code, § 211; undesignated section references are to this code; count I) and conspiracy to commit robbery (§ 182; count II). In connection with count I, the jury found that the dwelling was inhabited and that defendant personally used a deadly and dangerous weapon, to wit, a knife (§ 12022, subd. (b)(1)). In bifurcated proceedings, defendant admitted seven prior prison terms (§ 667.5, subd. (b)).

After trial and before sentencing, the trial court granted defendant's motion to substitute counsel (*People v. Marsden* (1970) 2 Cal.3d 118) and, after an evidentiary hearing, denied defendant's motion for a new trial based on juror misconduct and

2

insufficiency of the evidence. The court sentenced defendant to state prison for an aggregate term of 14 years, that is, the upper term of six years for robbery, a consecutive one-year term for personal use of a deadly weapon, and one year for each of the seven prior prison terms. For conspiracy, the court imposed but stayed sentence. The court awarded a total of 52 days of presentence custody credit (46 actual and six conduct days).

Defendant appeals.

We appointed counsel to represent defendant on appeal. Counsel filed an opening brief that sets forth the facts of the case and requests this court to review the record and determine whether there are any arguable issues on appeal. (*Wende, supra,* 25 Cal.3d 436.) Defendant was advised by counsel of the right to file a supplemental brief within 30 days of the date of filing of the opening brief.

Defendant filed a supplemental brief raising juror bias and ineffective assistance of counsel. With respect to ineffective assistance of counsel, defendant complains that his attorney would not "let [defendant] have any say in the juror selection" and there were "several issues" that defendant wanted his attorney to do "but he would not address them to the court's motion." (*Sic*.) Defendant does not specify what he wanted to say that his counsel ignored or what those issues were that his attorney failed to address. Based on our review of the record, ineffective assistance of counsel is not established. (*Strickland v. Washington* (1984) 466 U.S. 668, 688, 691-692 [80 L.Ed.2d 674, 693-694, 695-696]; *People v. Ledesma* (1987) 43 Cal.3d 171, 216-217.)

Defendant claims the "whole jury panel was bias[ed]" against him because "one juror knew [him] while one juror was a friend of [his] leading Det[ective] involved in [his] case," another juror was "really good friend[s] with Judge Garaventa" who presided over trial, the jurors "had friends that worked at the jail" where defendant was in custody, and the jurors were "all victim[s] of crimes."

"Demonstrated bias in the responses to questions on voir dire may result in a juror being excused for cause; hints of bias not sufficient to warrant challenge for cause may

3

assist parties in exercising their peremptory challenges." (*In re Hitchings* (1993) 6 Cal.4th 97, 111.) The fact that a juror may have been a victim of a crime or may know a party, a witness, or the judge does not necessarily render the juror biased. "It is not necessary that jurors be totally ignorant of the facts and issues involved in the case; it is sufficient if they can lay aside their impressions and opinions and render a verdict based on the evidence presented in court. [Citation.]" (*People v. Fauber* (1992) 2 Cal.4th 792, 819.) Defense counsel exercised seven of his 10 peremptory challenges before accepting the jury. (Code Civ. Proc., § 231, subd. (a).) "The failure to exhaust peremptories is a strong indication 'that the jurors were fair, and that the defense itself so concluded.' [Citation.]" (*People v. Price* (1991) 1 Cal.4th 324, 393; *People v. Daniels* (1991) 52 Cal.3d 815, 854.) Our review of the record discloses no juror bias.

We note an error in preparation of the abstract of judgment. Defendant admitted seven prior prison term allegations and was sentenced to one year for each. The amended abstract erroneously reflects seven years for one prior prison term. We will order the abstract corrected accordingly.

Having undertaken an examination of the entire record, we find no arguable error that would result in a disposition more favorable to defendant.

## DISPOSITION

The trial court is directed to prepare a corrected abstract of judgment reflecting that one year was imposed for each of the seven prior prison terms defendant admitted and to forward a certified copy to the Department of Corrections and Rehabilitation. The judgment is affirmed.

_____NICHOLSON_____, J.

We concur:

_____BLEASE_____, Acting P. J.

_____MAURO_____, J.

4