Filed 5/9/14  P. v. Smith CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D064142 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD246263) |
| RICHARD F. SMITH, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Eugenia Eyherabide, Judge.  Affirmed.

Patrick J. Hennessey, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel and Stephanie H. Chow, Deputy Attorneys General, for Plaintiff and Respondent.

At the request of defendant Richard Smith, and following his guilty plea, the trial court in this case conducted two *Marsden*[1] hearings. At both *Marsden* hearings, Smith claimed his counsel was ineffective and requested new counsel. At the first *Marsden* hearing, the trial court found that Smith had adequate legal representation at the time of his plea and there were no other grounds to withdraw his plea. The trial court gave Smith leave to retain new counsel. When Smith appeared again, Smith made a second *Marsden* motion which the trial court also denied. Our review of the record shows that Smith was adequately represented at all material times.

FACTUAL BACKGROUND:

On the evening of February 12, 2013, Jason Mikell reported a burglary at his residence. Police responded and when they arrived, they found Smith leaving Mikell's residence and arrested him. The police found a ladder on the side of the building and a pick ax in a hot tub on the property.

A window was smashed on the balcony of Mikell's residence. On the balcony police found a backpack containing Smith's drivers' license, a laptop computer, a black tablet case, a stethoscope, a blood pressure cuff and a second silver and black case. Mikell reported that the laptop and tablet cases belonged to Allen Mercier, a deceased former roommate. According to Mikell, Mikell was the executor of Mercier's estate. Mikell further stated that the stethoscope and blood pressure cuff belonged to a friend of

---

[1] *People v. Marsden* (1970) 2 Cal. 3d 118, 123.

Mikell and Mercier. Mikell told officers Smith was a former resident of the building who had moved out a year earlier.

After waiving his *Miranda* rights, Smith told the officers: "I was living in the house approximately three weeks ago. I got into an argument with Mikell and he demanded that I move out. Today, I [was] waiting for Mikell to leave the property and I took a ladder, placed it against the rear of the house and climbed onto the second story balcony. I used a pick axe to break a glass panel on the door so I could gain entry to the home. I placed the pick axe in the hot tube because I didn't want it to be used against me. I removed the DVD recorder because I didn't want Mikell to know it was me that entered the home. I put the items in my backpack and then got arrested."

PROCEDURAL BACKGROUND

On February 15, 2013, a complaint was filed against Smith alleging first degree burglary. (Pen. Code, §§ 459, 460.) Following a preliminary hearing, on April 5, 2013, Smith entered a guilty plea to one count of a lesser charge of second degree burglary. (Pen. Code, § 459.) At a sentencing hearing on May 7, 2013, Smith indicated that he wanted to withdraw his guilty plea. The court conducted a *Marsden* hearing in response to Smith's request.

During the hearing, Smith alleged his trial counsel had not conducted a thorough investigation and did not present evidence that would serve to exculpate Smith. Specifically, Smith argued that he actually lived at the residence, and the items that were apparently stolen actually belonged to him. Smith argued that if his counsel had

3

reviewed surveillance recordings at the residence or interviewed his mother or brother, counsel would have discovered that Smith was a resident of the building.

Smith's counsel stated that he had investigated Smith's claims that he was a resident of the building, and his investigator interviewed Smith's mother and brother. Counsel determined that there was no evidence which would support Smith's contention that he lived in the residence. Smith's counsel stated he advised Smith that if Mikell was illegally retaining property that belonged to Smith that the proper course of action was to file a report with the police, not break into the residence.

The trial court found that Smith had been adequately represented and denied his motion for new counsel. Smith requested a continuance to find another lawyer and to withdraw his plea.

At the June 12, 2013 continued hearing, Smith renewed his request for new counsel and the trial court conducted a second *Marsden* hearing. At the second *Marsden* hearing Smith stated he was actually innocent of the burglary. In particular, Smith stated that his court appointed counsel, Douglas Miller, had refused to communicate with him and did not investigate Smith's contention that the items the police recovered actually belonged to Smith. Because Smith believed the property belonged to him, he argued that he had no burglarious or felonious intent when he broke into Mikell's house. Smith also complained that a second public defender, Mignon Hilts, had been assigned to take over his case for purposes of trial. Smith stated that Hilts had ordered him to plead guilty.

4

In response, Miller stated that the issues Smith raised had been addressed at the first Marsden hearing. Miller repeated that there was no evidence that Smith was a resident of Mikell's house. With respect to Hilts's representation, Miller responded that Hilts wanted more trial experience and that if Smith's case went to trial she would represent him at trial. Miller reiterated that the decision to plead guilty to second degree burglary was Smith's own decision.

The trial court denied Smith's second *Marsden* motion.

DISCUSSION

The principles governing a *Marsden* motion made on the grounds counsel was ineffective in providing assistance with respect to a plea were fully considered by the court in *People v. Smith* (1993) 6 Cal.4th 684, 690-697 (*Smith*). In recapitulating a defendant's rights to new counsel, the court stated:

"The seminal case regarding the appointment of substitute counsel is *Marsden*, *supra*, 2 Cal.3d 118, which gave birth to the term of art, a '*Marsden* motion.' We there held that 'the decision whether to permit a defendant to discharge his appointed counsel and substitute another attorney during the trial is within the discretion of the trial court, and a defendant has no absolute right to more than one appointed attorney.' " (*Smith*, *supra*, 6 Cal.4th at p. 690.)

"We also established in *Marsden* that the trial court must give the defendant the opportunity to explain the reasons for desiring a new attorney. (*Marsden*, *supra*, 2 Cal.3d at pp. 123-125.) '[T]he trial court cannot thoughtfully exercise its discretion in this matter without listening to [the defendant's] reasons for requesting a change of attorneys.' (*Id.* at

5

p. 123.) Accordingly, 'When a defendant moves for substitution of appointed counsel, the court must consider any specific examples of counsel's inadequate representation that the defendant wishes to enumerate. Thereafter, substitution is a matter of judicial discretion. Denial of the motion is not an abuse of discretion unless the defendant has shown that a failure to replace the appointed attorney would "substantially impair" the defendant's right to assistance of counsel.' " (*Smith*, *supra*, 6 Cal.4th at pp. 690-691.)

The focus of a *Marsden* motion is on the representation the defendant has been provided: "It is the very nature of a *Marsden* motion, at whatever stage it is made, that the trial court must determine whether counsel has been providing competent representation. Whenever the motion is made, the inquiry is forward-looking in the sense that counsel would be substituted in order to provide effective assistance in the *future*. But the decision must always be based on what has happened in the *past*." (*Smith*, *supra*, 6 Cal.4th at p. 695.)

Like the defendant herein, the defendant in *Smith* entered a plea and then asked to have new counsel appointed for the purpose of making a motion to withdraw his plea on the grounds his trial counsel had not been effective in representing him prior to and at the time of the plea. The trial court, after listening to the defendant's complaints about counsel and counsel's explanation, denied the motion for new counsel. On appeal, the Court of Appeal reversed, holding new counsel should be appointed if the trial court determined on remand that the defendant had a "colorable" claim of ineffective assistance of counsel. The Court of Appeal reasoned that a defendant's burden in making a posttrial *Marsden* motion based on conduct that did not occur at trial is not as high as when a

6

*Marsden* motion is based on conduct that did occur at trial or had an impact on the trial. (*Smith*, *supra*, 6 Cal.4th at p. 691.)  On review, the Supreme Court disagreed and reversed the judgment of the Court of Appeal.  (*Id.* at p. 697.)  The Supreme Court found that a defendant's burden under *Marsden* is the same at all stages of a criminal proceeding:  "[T]he trial court should appoint substitute counsel when a proper showing has been made at any stage. A defendant is entitled to competent representation at all times, including presentation of a new trial motion or motion to withdraw a plea. . . .  In those cases in which counsel *was* ineffective, this is best determined early. Thus, when a defendant satisfies the trial court that adequate grounds exist, substitute counsel should be appointed. Substitute counsel could then investigate a possible motion to withdraw the plea or a motion for new trial based upon alleged ineffective assistance of counsel. Whether, after such appointment, any particular motion should actually be made will, of course, be determined by the new attorney.

"*We stress equally, however, that new counsel should not be appointed without a proper showing. A series of attorneys presenting groundless claims of incompetence at public expense, often causing delays to allow substitute counsel to become acquainted with the case, benefits no one. The court should deny a request for new counsel at any stage unless it is satisfied that the defendant has made the required showing. This lies within the exercise of the trial court's discretion, which will not be overturned on appeal absent a clear abuse of that discretion.*  [Italics added.]

"We thus hold that substitute counsel should be appointed when, and only when, necessary under the *Marsden* standard, that is whenever, in the exercise of its discretion, the court finds that the defendant has shown that a failure to replace the appointed attorney would substantially impair the right to assistance of counsel. . . ." (*Smith*, *supra*, Cal.4th at pp. 695-696.)

In *Smith*, the court went on to determine that the trial court did not abuse its discretion in denying the defendant's *Marsden* motion. (*Smith*, *supra*, 6 Cal.4th at p. 696.)

## II

As *Smith* makes clear, where the reasons stated by a defendant at a *Marsden* hearing do not, in light of any explanation offered by counsel, show any inadequacy of counsel or irreconcilable differences, a *Marsden* motion should be denied. (*Smith*, *supra*, 6 Cal.4th at p. 696.) Here, the record the fully supports the trial court's determination that counsel's representation was adequate.

At the outset it bears noting that Smith was initially charged with burglary in the first degree, a strike. (See Pen. Code, § 667.5 subd. (c)(21)). Smith's counsel advised him to take the prosecution's offer of a plea to second degree burglary which is not a strike. Thus, the plea provided Smith with a substantial benefit.

Importantly, the record shows that Smith's original counsel, Miller, fully investigated Smith's claim of being a resident of the home. After his investigator interviewed the witnesses Smith suggested, Miller found that there was no evidence to support Smith's claim that he was a resident of the home. Miller properly advised Smith

8

that if the property in question was in fact his, Smith should have filed a police report. The record with respect to the plea Smith entered establishes that both Miller and Hilts informed Smith of his rights during all relevant stages of the proceedings. Given this record, the trial court could reasonably conclude Miller and Hilts performed their duties to Smith adequately, and that Smith had no claim for ineffective assistance of counsel.

Smith nevertheless argues that trial counsel did not conduct a proper investigation because counsel did not review the surveillance recordings of the residence. Appellant argues that if Smith were given new counsel, new counsel would retrieve the recordings and present evidence which would prove Smith lived at the residence. Smith additionally argues that the communication breakdown between Smith and counsel was so severe that ineffective assistance of counsel resulted.

The surveillance recordings would not have provided Smith with any defense. By his own admission, Smith took the recording device from Mikell's residence so that he could not be identified as the intruder. Thus, even if the recordings showed that Smith had previously been in the home, the circumstances under which the police recovered the recordings show fairly conclusively that Smith understood he had no right to enter Mikell's residence on the evening of February 12, 2013, by use, no less, of a pick axe.

Counsel's full explanation of his conduct of the case shows that there was no substantial breakdown in communication.

Because the record shows that Smith received adequate representation, the trial court properly denied his *Marsden* motions.

DISPOSITION

The judgment of conviction is affirmed.

BENKE, Acting P. J.

WE CONCUR:

NARES, J.

IRION, J.