Filed 4/23/26  P. v. Clark CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>KC SCOTT CLARK,<br><br>    Defendant and Appellant. | F088886<br><br>(Super. Ct. No. 22CM2103)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Kings County. Robert S. Burns, Judge.

Solomon Wollack, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Galen N. Farris and Jeffrey A. White, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Defendant KC Scott Clark was convicted in a court trial of one count of forcible lewd act on a child and two counts of nonforcible lewd act on a child, and he was sentenced to 12 years in prison. His first claim on appeal is that his jury trial waiver was

invalid as it was not knowing, intelligent, and voluntary. We agree and reverse his convictions on this basis and remand for a new trial. This conclusion renders his other claims of error moot.

## STATEMENT OF THE CASE

A third amended complaint charged Clark with three offenses against E., a female. Count 1 charged him with lewd act on a child younger than 14 (Pen. Code, § 288, subd. (a)(1)).[1] Counts 2 and 3 charged him with forcible lewd act on a child younger than 14 (§ 288, subd. (b)(1)). The information further alleged as aggravating circumstances to all three counts that the victim was particularly vulnerable and that Clark took advantage of a position of trust or confidence. (See Cal. Rules of Court, rules 4.408 & 4.421.)

Clark waived his right to a jury trial on April 10, 2024, and a bench trial took place on June 20, 2024. The court found Clark guilty on counts 1 and 2. On count 3, the court found him not guilty of forcible lewd act, but guilty of the lesser included offense of nonforcible lewd act. The court also found true the two alleged aggravating circumstances.

On July 25, 2024, the trial court received a handwritten letter from Clark, alleging that his trial counsel had performed deficiently. The court construed the letter as both a motion for new trial and a *Marsden*[2] motion and set separate hearings for these motions. The court appointed separate counsel to represent him in connection with the motion for new trial.

Clark, through his new counsel, filed a motion for new trial on October 29, 2024. The court heard and denied the motion the next day and afterward heard and denied

---

[1] Subsequent statutory references are to the Penal Code.

[2] *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).

2.

Clark's *Marsden* motion. That same day, the court sentenced Clark to 12 years in prison, comprised of the middle term of eight years on the forcible lewd act count (count 2) and consecutive two-year terms (one-third the middle term) on the two counts of nonforcible lewd act.

**FACTS**

**I.      Prosecution's case**

E. was born in August 2005. She was the prosecution's only witness at trial. Clark's wife, Marlene, was E.'s aunt. Clark had known E. since she was little. E. did not have a relationship with her father, and Clark filled in as a father figure to her. Clark had two children, a son and a daughter, both of whom were younger than E. E. loved Clark's kids and spent lots of time with them.

Around age 12, E. babysat for Clark's children multiple times over a two-week period. She would stay overnight at Clark's apartment in Lemoore on nights when Marlene had to work a nightshift. During the overnight visits, Clark would also be home until he left for work in the morning. E. would be alone with the kids in the time between Clark leaving and Marlene returning home.

Clark and his family lived in a small, two-bedroom apartment, but nobody used the second bedroom. When E. spent the night, she slept in the same bed as Clark and his children. She slept in shorts and a T-shirt or tank top. There were times when E. would be alone in bed with Clark.

During this period, Clark sometimes grabbed E.'s hand and made her touch his penis. She could feel he had an erection. Feeling scared, she would pretend to be asleep. On some occasions, Clark stopped only to resume later. Sometimes E. would move her hand away or pretend to be rolling over; Clark would then wait a few minutes before moving her hand back. These incidents formed the basis for the count 1 charge.

Another time, E. was lying in bed on her back when Clark pulled up her shirt and bra and touched her exposed breasts with his hands. She was scared and pretended to be asleep. This incident was the basis for the count 3 charge.

The last incident of touching began when E. was lying in bed on her side, facing away from Clark. She knew she was about to be touched, so she moved away from him in the bed. Clark moved himself closer to E. and pushed up against her, with his hands on her hips and his penis against her lower back and butt. Clark stopped when E. reached the edge of the bed and nearly fell off. This incident was the basis of count 2.

E. testified these incidents occurred in the summer of 2016 or 2017. All of them occurred during the two-week period when she was babysitting.

When E. was 16, she disclosed the touching to her psychiatrist, who she was seeing for help with self-harming behavior. She later told her mother and made a police report.

## II. Defense case

Clark testified in his own defense, and he called no other witnesses. He admitted that he had shared a bed with E. and his children. He explained that his wife, Marlene, grew up sleeping in her parents' bed, and it was her idea to sleep together as a family. Clark denied ever touching E. inappropriately.

## DISCUSSION

## I. Jury trial waiver

Clark claims his waiver of trial by jury was inadequate because it is unclear whether the waiver was knowing and intelligent. We agree; the record before us does not affirmatively demonstrate that his waiver was knowing and intelligent under the totality of the circumstances.

### A. Background

The complaint in this case was filed May 20, 2022, and Clark was arraigned on May 24, 2022. His attorney was appointed for him on the date of his arraignment.

At an April 10, 2024,[3] trial readiness conference, Clark's attorney said the defense wished to waive its right to a jury trial. Defense counsel stated: "We would like to waive our right to a jury trial. Vacate the dates as they are currently set, and reset it for a court trial. And I think [the prosecutor] has a suggestion on a date that works."

The prosecutor suggested June 20th.

The trial court agreed with that date and then took Clark's waiver of his right to a jury trial:

> "THE COURT: Mr. Clark, you have a right to have a jury trial, that is where people who live in the county would come to court, listen to the evidence, and they decide if it shows beyond a reasonable doubt that you're guilty of the charges.
>
> "You also have a right to have a court trial. That is where a judge listens to the evidence, and decides whether it shows beyond a reasonable doubt that you're guilty of the charges.
>
> "The rules of evidence are exactly the same in each trial, the only difference is [who] listens to the evidence.
>
> "Do you understand that?
>
> "THE DEFENDANT: Yes, sir.
>
> "THE COURT: Do you want to waive your right to a jury trial and set it for a court trial on June 20th?
>
> "THE DEFENDANT: Yes, sir.
>
> "THE COURT: [Prosecutor], the People waive their right to a jury trial?
>
> "[THE PROSECUTOR]: Yes, your Honor.
>
> "THE COURT: All right, we'll go ahead and note the waiver. Set it for June 20th at 1:30 for a court trial. Vacate the current trial dates that are set."

---

[3] Subsequent references to dates are to dates in 2024.

Clark's right to a jury trial was not discussed at any other time, and Clark did not sign a written waiver of his jury trial right.

## B. Applicable law

A criminal defendant has the constitutional right to a jury trial. (U.S. Const., 6th Amend.; Cal. Const., art. I, § 16; *People v. Sivongxxay* (2017) 3 Cal.5th 151, 166 (*Sivongxxay*).) The defendant may waive the constitutional right to a jury trial, provided the waiver is knowing, intelligent, and voluntary. (*Sivongxxay*, at p. 166.) A waiver is knowing and intelligent if it is made with full awareness of the nature of the right and the consequences of abandoning it. (*Ibid.*) It is voluntary if it was the product of a free and deliberate choice, rather than intimidation, coercion, or deception. (*Ibid.*)

Whether a defendant satisfies that standard " 'must depend upon the unique circumstances of each case.' " (*Sivongxxay, supra,* 3 Cal.5th at p. 166.) Our Supreme Court has "persistently declined to mandate any specific admonitions describing aspects of the jury trial right." (*People v. Daniels* (2017) 3 Cal.5th 961, 992 (lead opn. of Cuéllar, J.) (*Daniels*); *Sivongxxay*, at p. 167 ["Our precedent has not mandated any specific method for determining whether a defendant has made a knowing and intelligent waiver of a jury trial in favor of a bench trial"].) "We instead examine the totality of circumstances." (*Sivongxxay*, at p. 166.)

A reviewing court's task is to independently examine the record to determine whether the defendant's jury waiver was knowing, intelligent, and voluntary. (See *People v. Doolin* (2009) 45 Cal.4th 390, 453.) We will "uphold the validity of a jury waiver ' "if the record *affirmatively* shows that it is voluntary and intelligent under the totality of the circumstances." ' [Citation.] We do not start with a presumption of validity that may only be rebutted by signs of a defendant's confusion or unwillingness in entering a waiver. Instead, a reviewing court satisfies itself of a legitimate waiver only when the record affirmatively demonstrates it was knowing and intelligent." (*Daniels, supra,* 3 Cal.5th at p. 991 (lead opn. of Cuéllar, J.).)

Our Supreme Court has eschewed "any rigid formula or particular form of words that a trial court must use in taking a jury waiver[.]" (*Sivongxxay, surpa,* 3 Cal.5th at p. 169; see also *id.* at p. 170 ["we emphasize that our guidance is not intended to limit trial courts to a narrow or rigid colloquy"].) That said, it has emphasized "the value of a robust oral colloquy in evincing a knowing, intelligent, and voluntary waiver of a jury trial." (*Id.* at p. 169.) The court has recommended "that trial courts advise a defendant of the basic mechanics of a jury trial in a waiver colloquy, including but not necessarily limited to the facts that (1) a jury is made up of 12 members of the community; (2) a defendant through his or her counsel may participate in jury selection; (3) all 12 jurors must unanimously agree in order to render a verdict; and (4) if a defendant waives the right to a jury trial, a judge alone" will make the decision. (*Ibid.*)

The Supreme Court has also recommended "that the trial judge take additional steps as appropriate to ensure, on the record, that the defendant comprehends what the jury trial right entails. A trial judge may do so in any number of ways—among them, by asking whether the defendant had an adequate opportunity to discuss the decision with his or her attorney, by asking whether counsel explained to the defendant the fundamental differences between a jury trial and a bench trial, or by asking the defendant directly if he or she understands or has any questions about the right being waived. Ultimately, a court must consider the defendant's individual circumstances and exercise judgment in deciding how best to ensure that a particular defendant who purports to waive a jury trial does so knowingly and intelligently." (*Sivongxxay, supra,* 3 Cal.5th at pp. 169–170.)

C.    **Analysis**

The record here does not affirmatively show that Clark's jury trial waiver was knowing and intelligent under the totality of the circumstances. The court's advisement addressed only one and a half of the four "basic mechanics" of a jury trial described in *Sivongxxay*: that a judge alone would decide guilt if Clark forwent a jury trial, and that the jury would be composed of "people who live in the county." But the advisement

omitted that a jury consists of 12 people, that jurors are selected from a larger pool of prospective jurors in a process in which he could participate through counsel, or that a jury verdict must be unanimous—meaning that the prosecution would have to convince all 12 jurors of his guilt beyond a reasonable doubt, rather than a single judge.

Nothing in the record shows Clark had ever been advised of these omitted mechanics. He had no prior criminal history, and thus no prior occasion to receive such advisements from a court or otherwise. (See *Sivongxxay, supra,* 3 Cal.5th at pp. 167–168 [defendant's previous experience with the criminal justice system is relevant to whether a waiver was knowing and intelligent].) Nor does the record show a written waiver form was used. (See *People v. Weaver* (2012) 53 Cal.4th 1056, 1070 [though not required, written waiver form is helpful to establish the adequacy of a jury waiver].)

The record also does not reflect that Clark had a meaningful discussion with his attorney about the mechanics of a jury trial or the relative advantages and disadvantages of each type of trial. It is reasonable to infer that he and his counsel discussed the threshold question of whether to waive jury trial, given that counsel initiated the waiver request on Clark's behalf. But nothing in the record supports an inference that their discussion extended to the nature of the jury trial right itself—the specific features that distinguish it from a bench trial and that bear on the wisdom of the waiver. The record is silent on what counsel communicated to Clark about these mechanics, and silence does not satisfy the affirmative-record requirement. (*Daniels, supra,* 3 Cal.5th at p. 991 (lead opn. of Cuéllar, J.).)

The People argue that Clark's two years of representation by counsel, his silence when counsel announced the waiver, and his affirmation that he understood his rights demonstrate a knowing and intelligent waiver. His silence when counsel announced the waiver may speak to voluntariness, but none of these circumstances establishes that the waiver was knowing and intelligent. Two years of representation says nothing about what counsel actually communicated to Clark about the mechanics of the jury trial right.

8.

That he acquiesced in counsel's announcement and affirmed he understood his rights likewise does not establish that he understood what he was giving up. As Justice Cuéullar observed in *Daniels*, a defendant's failure to voice confusion or objection is an unreliable indicator of informed waiver: " 'You don't know what you don't know' encapsulates the futility of relying on defendants to raise questions or identify misunderstandings on their own when they lack the very basis to understand what lies beyond the scope of their knowledge." (*Daniels, supra,* 3 Cal.5th at p. 995 (lead opn. of Cuéllar, J.).) None of these circumstances, individually or collectively, constitute the affirmative record of knowing and intelligent waiver the law requires.

*People v. Jones* (2018) 26 Cal.App.5th 420 (*Jones*) is instructive. There, a two-question colloquy conducted solely by the prosecutor asked the defendant whether she understood her right to a jury trial and agreed to waive it and have the judge alone " 'decide the case.' " (*Id.* at p. 428.) The record did not show whether the defendant's attorney had ever discussed the nature of a jury trial with her, including that a jury would be made up of 12 peers from the community. (*Ibid.*) The defendant also had no prior experience with the criminal justice system and thus had never been advised of her rights by a court. (*Id.* at pp. 436–437.) The *Jones* court held that the record did not affirmatively show a knowing and intelligent waiver under the totality of the circumstances. (*Id.* at p. 437.)

The only difference between the advisement colloquy here and the one in *Jones* is that Clark was informed the jury consisted of county residents. The colloquy here was thus only marginally more informative and does not warrant a different outcome. Like the *Jones* defendant, Clark had no prior experience with the criminal justice system and received no advisement on the remaining "basic mechanics" of a jury trial. Also as in *Jones*, the record contains no indication that counsel supplied the information the court omitted.

We conclude the record does not affirmatively demonstrate that Clark's jury trial waiver was knowing, intelligent, and voluntary under the totality of the circumstances. The error is structural, requiring reversal of all of Clark's convictions regardless of the strength of the evidence. (*Jones, supra,* 26 Cal.App.5th at p. 429.)

Our conclusion on this issue renders Clark's other claims of error moot. He contends that insufficient evidence supports his conviction for forcible lewd act and that he received ineffective assistance of counsel at his sentencing. We need not address these claims.

## DISPOSITION

The judgment is reversed, and the matter is remanded for a new trial.


SNAUFFER, J.

WE CONCUR:


LEVY, Acting P. J.


FRANSON, J.