Filed 4/27/26  P. v. Santiago CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B345016 |
| Plaintiff and Respondent, | Los Angeles County Superior Court No. |
| v. | LA099208 |
| RAFAEL SANTIAGO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Gregory A. Dohi, Judge.  Affirmed.

Ryan Peabody and California Appellate Project, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

————————————

After reviewing this appeal pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*), we affirm.  Statutory citations are to the Penal Code.

An information charged Rafael Santiago with crimes related to a stolen car and a 2023 gun encounter.  The information included a personal gun use allegation (§ 12022.5, subd. (a)), Santiago's six prior felony convictions, and other aggravating factors.

Six counts made it to trial:  assault with a firearm (§ 245, subd. (a)(2)), criminal threats (§ 422, subd. (a)), possession of a short-barreled shotgun (§ 33215), felon in possession of a firearm (§ 29800, subd. (a)(1)), assault with a deadly weapon (§ 245, subd. (a)(1)), and receiving stolen property (§ 496).

Before trial, Santiago made an oral motion under *People v. Marsden* (1970) 2 Cal.3d 118.  The court heard from Santiago and kept his counsel on the case.

Santiago said he wanted to represent himself but ultimately kept his counsel.

At trial, the jury saw security footage of the May 2023 incident and heard from victim Jorge Portillo and his wife Fabiola Dominguez.

Portillo had seen Santiago around his workplace for several weeks.  A week before the incident, Santiago and two others harassed Portillo there.  They called him a "fucking Mexican." Portillo did not respond.

A week later, on May 9, 2023, Portillo had finished work and was waiting to be picked up.  Santiago approached him on a skateboard with an unleashed pitbull.  The two men exchanged words.  Santiago was acting "crazy" and "aggressive."  He repeatedly called Portillo a "fucking Mexican" and told him to go

2

back to his country.  Santiago tried to hit Portillo with his skateboard — or at least held it threateningly.  Portillo was afraid and called his wife.

When Dominguez arrived, Portillo grabbed a hammer from his wife's SUV and held it at his side.  He may have taken a couple steps toward Santiago, who at this point was almost 40 feet away.  But Portillo stayed by the SUV.  His baby and older son were inside.

Santiago said he was going to kill Portillo.  He went to a school bus parked nearby and grabbed a shotgun.  The bus had been there for several weeks; Portillo thought Santiago lived in it.

Santiago raised the gun, racked it, and pointed it at Portillo for five seconds.  Santiago's acts were videotaped and were shown to the jury.

Portillo quickly got into his wife's car.  He saw Santiago go back and forth between the bus and a gray Volkswagen, "getting things out" from both vehicles.  Portillo had seen this car at his workplace for several weeks by then.

Santiago unsuccessfully tried to start the car.  Then he set off on his skateboard.

Dominguez was talking to a 911 operator during the incident.  She described Santiago's acts to the operator.  She told the police where to go and watched them arrest Santiago.  The transcript of this call was a trial exhibit.

Robert Maile identified the gray Volkswagen as his.  He testified it had been stolen in February 2023.

Several officers testified about the state of this car and the short-barreled shotgun found inside it.  The license plate did not match the VIN number, signaling the car was stolen.  The inside was damaged.  It had been hot-wired to start without the fob.

An officer talked to Portillo right after the incident. Portillo appeared shaken and scared. He denied that Santiago had threatened to kill him. Portillo explained he was nervous and in shock and later testified English was his second language. He told a detective about Santiago's threat the day after the incident.

Santiago did not testify.

In the afternoon of the first day of deliberations, the judge received a note saying the jurors were deadlocked, one juror was refusing to follow the law, and this juror was heard talking about the case loudly in the hallway. With counsel present, the judge spoke with the foreperson, who reported Juror 17 was ranting and seemed unstable and unreasonable. The court called in other jurors, individually. They had different views about Juror 17: he appeared irrational and incoherent; he did not understand the instructions and was making up his own; he was acting "pretty normal . . . just voicing his opinions" and sticking to them; he's "expressing himself" and "attempting to respond to questions" but was difficult, although "he's not singing beachboy songs in there or anything goofy." Several jurors had heard Juror 17 commenting on the case to himself in the hall or in the parking structure.

Juror 17 told the court he was in "perfect health." He denied talking about the case with anyone outside the courtroom but conceded he may have mumbled to himself. He volunteered that he was the holdout and the judge could switch him out with an alternate.

The court excused the jurors for the day.

The next morning, Santiago refused to come to court. The jury resumed deliberating and reached a verdict.

The court spoke with the foreperson and another juror who had commented the day before. Today, the jury had "a different kind of conversation." Juror 17 was complying with the rules. He was behaving rationally. He did not act in any way unusual, erratic, or incoherent.

On the issue of whether the court needed to conduct any additional investigation, neither party wanted to be heard further.

The defense later moved for a mistrial, which the court denied.

The clerk eventually read the verdicts with Santiago present. The jury convicted him of all six counts. It found true the gun use enhancement and several aggravating factors. It also found the value of the stolen car was greater than $950.

Juror polling confirmed the verdicts.

The defense later petitioned for the release of personal juror information. The court granted this relief.

The defense filed a motion for new trial questioning Juror 17's competence and suggesting he was coerced. In the sole declaration supporting this motion, a fellow juror concluded Juror 17 appeared frustrated at times but was competent, a critical thinker, and mentally sound.

The court denied the new trial motion and sentenced Santiago to seven years and eight months in prison. This was the mid term of three years on the first count (assault with a firearm), plus the mid term of four years on the firearm enhancement, plus eight months for the last count (receiving stolen property), which was one-third of the mid term. The court stayed the sentences for the other counts under section 654. The court gave Santiago custody credit and imposed various fines.

Santiago appealed.

Santiago's appellate counsel filed an opening brief raising no issues and asking this court to review the record independently under *Wende*.  Counsel also advised Santiago of his right to file a supplemental brief for us to consider.  Santiago did not file a response.

We have examined the entire appellate record.  We are satisfied counsel fully complied with his responsibilities and no arguable issues exist.  (See *Wende*, *supra*, 25 Cal.3d at pp. 441–442.)

## DISPOSITION

We affirm the judgment.


WILEY, Acting P. J.


We concur:



VIRAMONTES, J.



SCHERB, J.